[C. D. No. 891. *En Banc.* August 12, 1926.]

*In the Matter of the Proceedings for the Disbarment of* W. G. BOLAND.[1]

[1] ATTORNEY AND CLIENT (7)—DISBARMENT—GROUNDS—UNPROFESSIONAL CONDUCT. Sharp practice by an attorney with intent to deprive a party of one of his substantial rights is sufficient to warrant disciplinary measures by the court.

[2] SAME (7)—DISBARMENT—CHARGES—SUFFICIENCY OF EVIDENCE. The pre-dating of a deed with intent to obtain unfair or technical advantage of an insurance company is not sufficient to warrant suspension of the attorney where the insurance company was advised of the basis of the claim at the time the deed was executed and there was no clear and convincing evidence sufficient to overcome the presumption that the attorney acted with proper intent (Parker, J. dissenting).

[3] SAME (9-1)—APPEAL—ACCEPTANCE. On appeal from a board of examiners recommending suspension of an attorney, the failure of the *Attorney General* to except to a recommendation against the state, does not prevent its review by the supreme court.

[1]Reported in 248 Pac. 399.

[4] SAME (7)—DISBARMENT—NEGLIGENCE OF ATTORNEY. Where a question has been decided by this court in two cases and is well settled throughout the United States, it is gross negligence for an attorney to fail to inform himself and to allow a client to lose through his failure to make any search whatever of the authorities.

[5] SAME (9)—DISBARMENT—PUNISHMENT—SUSPENSION FROM PRACTICE. Where it appears that an attorney has been guilty of sharp practice and grossly negligent and is lacking in that finer sense of what is ethical, so necessary to success at the bar, he will be suspended for ninety days.

Proceedings filed in the supreme court, June 23, 1925, for the disbarment of an attorney, upon the findings of the state board of law examiners against the accused. Order of suspension entered.

*The Attorney General, L. B. Donley* and *R. G. Sharpe, Assistants,* for the state.

*O. R. Schumann, Harold B. Gilbert, H. J. Snively, Geo. H. Mullins* and *Thos. H. Wilson,* for accused.

TOLMAN, C. J.—This is a proceeding before the state board of law examiners for the disbarment of an attorney. The board, after full hearing, made a report, findings of fact, and recommendations to this court, in part as follows:

"With reference to the first cause of action, we find the facts to be as follows:

"On August 4, 1921, the White Swan Auto Company, a corporation, gave to C. A. Payne its note for $4,000 and secured it by a chattel mortgage on its personal property and a mortgage upon a tract of land, and subsequently becoming in failing circumstances made an assignment for the benefit of creditors to respondent W. G. Boland. The respondent did not take possession of the property covered by the mortgage, and the installments of principal and interest on the note not being paid, Mr. Payne declared the whole debt due, and commenced foreclosure proceedings by notice and sale, which resulted in the personal prop-

erty described in the notice being sold and Mr. Payne became the purchaser thereof at a price considerably less than the whole amount of indebtedness. After these proceedings were had it was discovered that some of the personal property covered by the mortgage had been omitted from the notice and was not covered by the sheriff's sale and Mr. Payne commenced an action in the Superior Court of Washington, for Yakima County, to foreclose the mortgage as to this personal property and also the real estate mortgage, and made the respondent a party thereto in his capacity as assignee for the benefit of creditors of the White Swan Auto Company, and asked that a Receiver of the corporation be appointed. On June 12, 1922, M. A. Hale was appointed receiver of the corporation and authorized to take possession of its property and hold the same subject to further order of the court.

The Receiver qualified but left the personal property in the garage building of the corporation, but placed the same under his own lock and key. While these proceedings were being had, the White Swan Auto Company was adjudged a bankrupt, and the respondent was appointed trustee on or about July 6, 1922, and qualified as such on or about August 18, 1922. The respondent as Trustee in Bankruptcy moved to be allowed to intervene in the above action, which application was granted, and on September 8, 1922, he filed an answer and cross complaint in which he set up the invalidity of the note of $4,000 given by the White Swan Auto Company to Mr. Payne, and the real estate and chattel mortgages given to secure it, the invalidity of the notice and sale proceedings, alleged the value of the personal property sold to Mr. Payne thereunder was $2,000, and prayed for a cancellation of the note and mortgage, and that the personal property sold under the notice and sale proceedings to be returned to him as Trustee in Bankruptcy, or in case return could not be had, for a judgment against Mr. Payne in the sum of $2,000. The case came on for trial, and on September 30, 1922, a judgment was entered as prayed for in the complaint, said judgment being in the alternative for the return

of the personal property sold to Mr. Payne under the notice and sale proceedings, or if delivery could not be had that the respondent have a money judgment against Mr. Payne in the sum of $2,000. From this judgment an appeal was taken to this court, but no supersedeas bond was put up by Mr. Payne.

"After the entry of the judgment awarding respondent possession of the personal property, he made demand upon the attorneys for the Receiver for its possession, and followed this up by making application to the court for an order discharging the Receiver and directing him to deliver the assets and property of the White Swan Auto Company to him, which application was denied. It does not affirmatively appear from the record that the attention of the court was called to the judgment awarding the respondent possession of the property, or why the application for possession thereof was denied.

"The respondent on October 6, 1922, caused a special execution to be issued out of the superior court, and upon said judgment as though the same was one in his favor and against Mr. Payne for $2,000.00 and costs. When this execution was placed in the hands of the sheriff, he and the respondent went to the building where the personal property was located and which was still in the possession of the Receiver, removed the lock from the door, and thereupon the sheriff levied upon said property and gave notice of sale thereof. On November 4, 1922, pursuant to this notice the property was sold by said sheriff. (For reference to the foregoing, see respondent's Exhibit 'B').

"The sheriff's sale was attended by respondent, not in his capacity as Trustee in Bankruptcy, but as attorney and agent for one George H. Thompson, and there was sold to him by the sheriff all of the personal property for the sum of $50, although in his cross-complaint the respondent had alleged, and in the judgment, the value of the property was found to be $2,000. After making this purchase the respondent took full possession of the personal property, and later acting for Mr. Thompson, sold a portion of it to Yakima county for $600.

"The respondent seeks to justify this method of procedure by the contention that if he put the property out of the way so that Mr. Payne could not deliver it to him in accordance with the judgment of the court, he would then be entitled to collect from Mr. Payne the sum of $2,000 awarded by the alternative judgment (Tr. 94-97).

"The judgment herein referred to was reversed by this court (*Payne vs. White Swan Auto Company,* 126 Wash. 550), it being decided that the foreclosure of the chattel mortgage by notice and sale proceedings could not be attacked collaterally, and that by his purchase at such sale Mr. Payne had become the owner of the property.

"Yakima county made an adjustment with Mr. Payne as to the property it had purchased from the respondent, and then brought suit against Thompson to recover what it had paid to him, and recovered judgment therefor.

"While the action of the court in refusing to direct its officer, the Receiver, to deliver possession of the personal property to respondent after the court had awarded him possession of it by the judgment above referred to was inconsistent, we think the acts of the respondent in causing execution to be issued, having the property sold and bidding the same in for, and purchasing the same for a nominal sum in behalf of, a client under the circumstances, and for the purposes above set forth, were dishonest and unprofessional and in violation of his duty as an attorney at law charged with a trust.

"The facts relative to the second cause of action we find to be as follows:

"About January 1, 1923, Roy J. Nye closed negotiations with Robert M. Smith purporting to act as agent for N. Y. Miller, of Seattle, for the purchase of two lots in Yakima, upon which there was a dwelling house. Mr. Nye paid Smith $300 and got a purchase money receipt. There was a mortgage on the property held by the Liberty Savings & Loan Association and the house had been insured by Miller for $1,000, loss payable to the association as its interest might ap-

pear, and this policy it kept in its possession. On January 5, 1923, Nye took out an insurance policy on the house for $1,000 in another insurance company. As a part of the purchase price, Nye was to assume the mortgage and pay the difference in monthly install- ments. There was some delay in getting possession of the property as it was occupied by one. Barton who held a contract to purchase, but was in default thereon. A real estate contract was prepared for Miller and wife and Nye to sign, the plan being that their con- tractual relations thereunder should commence April 2, 1923. The agent Smith took the contract to Seattle to have Miller and wife sign it, but did not find them, and the contract was never signed by either party. Smith kept the $300 that Nye had paid him for Miller and disappeared. Before moving into the house, Nye desired to make some repairs, and under date of April 3, 1923, secured a vacancy permit of two months from the agent of the insurance company which had issued him his policy. No such permit was secured from the insurance company who issued the policy to Miller, with loss payable to Liberty Savings & Loan Association, there seeming to be some misunderstand- ing as to whether or not one was required. On April 24, 1923, the house was destroyed by fire. Proof of loss was made by Nye about June 18, 1923, (Exhibit 'D'). Both insurance companies denied liability. The insurance company issuing the policy to Nye claimed that he had no insurable interest in the property when it was burned, that his only evidence of interest was the purchase money receipt and the unsigned contract (Exhibit '2'). When this objection was made known to respondent, he entered into negotiations with Miller to secure a quit claim deed from him, and sometime in the latter part of May or the fore part of June, 1923, went to Seattle and secured such a deed from Miller and wife, and delivered to him a note and mortgage securing the balance of the purchase price which had been executed by Nye and wife and acknowledged be- fore respondent as notary public. This deed was back dated by respondent to April 2, 1923 (Exhibit '3'), acknowledged before him as notary public as of

April 2, 1923, though he did not put his seal thereon until sometime later. The mortgage was likewise back dated and acknowledged as of April 2, 1923, (Exhibit '12'). The mortgage was placed of record May 29, 1923, but the deed was not placed of record until January 30, 1924, when it was withdrawn from the files of the court where it was an exhibit in order to keep straight the chain of title (page 2, Exhibit '4').

"On or about. May 9, 1923, the Liberty Savings & Loan Association commenced an action to foreclose its mortgage, making both Nye and Miller parties defendant. Nye appeared by respondent as his attorney and answered, setting up a plea of estoppel, the theory being that having knowledge that the house was going to be vacant while being repaired and not having secured a vacancy permit from the insurance company issuing the policy to Miller held by it the insurance money that could have been received to pay off the mortgage was lost to all interested parties. (See amended answer in Exhibit '4.') The case came on for trial before the Hon. A. W. Hawkins in the superior court of Washington, for Yakima county, and the respondent as attorney for Nye sought to establish the fact that Nye had an insurable interest in the property at the time of the fire on April 24, 1924, so as to maintain his plea. To do this he first produced the unsigned real estate contract (Exhibit '2') which was not received in evidence by the court. He then informed the court that he had at his office a deed to Nye for the property and would produce it at the afternoon session. During the noon recess he exhibited the deed to counsel for plaintiff, and when court convened the deed was offered and received in evidence. The absence of the seal had been noted and was supplied. The case was taken under advisement. The respondent informed the judge privately at chambers that the deed (Exhibit '3') had been back dated and the manner in which it was procured. The testimony is in some conflict as to whether this fact was made known to the attorney for the plaintiff. At or about this time, but at any rate while the case was under advisement, the plaintiff moved to reopen it for the purpose of

taking the deposition of Miller to prove that the deed had been executed long after the date of the fire April 24, 1923, and back dated to April 2, 1923. This application was granted and depositions taken which established this fact, (Exhibit '3'). A decree of foreclosure was entered.

"We find that the deed, Exhibit '3' was procured by respondent and falsely dated by him for the purpose of establishing an interest in Mr. Nye to the property described therein which he never had, and to procure the payment of insurance money he was not entitled to, and for the further purpose of enabling Nye to set up the plea of estoppel to the foreclosure proceedings to be commenced by the Liberty Savings & Loan Association, and to deceive the court by the use as genuine of a false document. We believe that the acts on the part of respondent were dishonest, fraudulent and in violation of his duties as an attorney at law.

"The facts as to the third cause of action we find to be as follows:

"In the spring of 1923 Alice M. Banks and husband entered into negotiations to trade some property owned by them for a twenty acre ranch in Yakima county, patent to which had been issued to H. J. Buckles. After Mr. Buckles had made final proof at the United States land office, but before patent was issued he mortgaged the land to one David P. Brown securing a debt of $800.00. Mrs. Banks employed the respondent to represent her in the transaction and furnished him an abstract of title to the land to examine same. The respondent had been informed by Mrs. Banks that there was a mortgage on the land, and he confirmed this from his examination of the abstract, and also found that there was a judgment against Brown which had been obtained before patent issued. He advised Mrs. Banks that the mortgage and judgment were invalid because of Section 2296 of the Revised Statutes of the United States (6 Federal Annotated Statutes, 1st Edition, page 307-8) which reads as follows:

" 'No lands acquired under the provisions of this chapter shall in any event become liable to the satisfaction of any debt contracted prior to the issuing of the patent therefor.'

"The respondent went no further in his investigation as to the validity of the mortgage given between the time of final proof and issuance of patent other than to read over the statute and did not examine the notes to the statute found in 6 Annotated Statutes (1st Edition) page 307-8, but had he done so he would have discovered that his interpretation of the statute was erroneous, and that it had been decided by this and other courts that a mortgage so given was valid. Acting on the advice of respondent, the transaction was consummated and a deed taken to the land, the respondent accepting a quit claim deed for his clients. The judgment had in the meantime been satisfied as respondent had convinced the judgment creditor that it was invalid. Mrs. Banks paid respondent $50 under date of June 25, 1923, (Exhibit '8'). There is a sharp conflict in the testimony as to what this payment was for, Mrs. Banks contending that it was for the purpose of removing the cloud on the title created by the mortgage, and the respondent claiming that it was in payment for his services rendered in the land trade. We think the receipt (Exhibit '8') so corroborates the testimony of Mrs. Banks as to warrant the finding that some of the money at least was an advance to respondent to take the necessary affirmative steps to clear the title. This he did not do. Action was later commenced to foreclose the mortgage of which respondent became aware, he informing the attorney for the plaintiff that Mr. and Mrs. Banks who were made defendants with others were residents of Yakima, and that when served he would appear in the action. The record in this case, (Exhibit '9') does not show any service of process upon Mr. and Mrs. Banks though default was taken against all of the defendants named in the summons and complaint. A decree of foreclosure was entered, the property sold on execution and the sale confirmed. It may be that this sale can be set aside by Mr. and Mrs. Banks because of

lack of jurisdiction to enter the decree as to them, but they are financially unable to pay off the mortgage which is a valid one, and thus their land is lost to them because of the erroneous advice given to them by respondent.

"We think the respondent was negligent in his failure to inform himself as to legality of the mortgage to such an extent as to be censurable, as an examination of the note appended to the statute would have demonstrated to him what the law was, and that the mortgage was a valid one, but we do not think that an attorney can be disbarred or suspended for a single act of negligence not amounting to gross incompetency.

"We recommend that the third cause of action be dismissed; but by reason of the acts of unprofessional conduct found to exist in the first and second causes of action, that the respondent be suspended from the practice of law for a period of one year."

[1] After an earnest effort to assimilate all of the facts shown by the long and greatly involved record, we find ourselves not able wholly to agree with the findings of the board. The facts, as found, relating to the first cause of action are sufficiently accurate, but we have some doubt as to the conclusion of the board that there was an actual dishonest purpose. That those acts were unprofessional, cannot be doubted. The failure to produce, as a witness, George H. Thompson, and obtain his version of the facts, leaves a suspicion as to the understanding and relationship between Boland and himself in the beginning, and leaves open the question of whether or not Boland expected to profit personally by the transaction. He clearly and emphatically denies any intent to so profit, and, in the absence of any direct evidence to the contrary, the suspicion will not be permitted to prevail. Enough is admitted by Boland to convict him of sharp practice in the attempt to deprive Payne of one of his substantial

rights under the alternative judgment, and that, of itself, warrants disciplinary measures by this court.

[2] We are not so well satisfied by the facts found as to the second cause of action. In the first place, if we read the record aright, the action by the Liberty Savings & Loan Association to foreclose the Miller mortgage was commenced August 9, 1923, and not May 9, as stated in the findings of the board, and the record is silent as to any threat or intimation of such an action at, or before, the time the deed was procured. Moreover, as we grasp the issues in the foreclosure case, Boland, defending for Nye, did not base his defense upon Nye's having an insurable interest in the property at the time of the fire, but rather upon the supposed negligence of the mortgagee in not obtaining a vacancy permit from the insurance company, thereby enabling it, after the fire, to collect from the insurance company sufficient money to satisfy the mortgage in full, leaving Nye's interest in the property (insurable or not) free and clear of the mortgage lien. Hence, the conclusion that the deed was pre-dated for the purpose of basing a defense to the foreclosure suit thereon is, we think, unwarranted.

That the purpose of pre-dating the deed was to obtain an unfair or technical advantage over the North Carolina Home Insurance Company might, in an ordinary civil proceeding, be properly found from the evidence here adduced. But this is one of those proceedings where affirmative action should be based only on clear and convincing evidence, and there is enough shown to indicate that the insurance company was advised of the basis of Nye's interest before the deed was executed, and the presumption that Boland acted with proper intent is not sufficiently overcome. There does not appear, however, any justification for the drafting of a proof of loss by Boland for Nye, stating that Nye

had a fee simple title, subject only to certain mortgages. Notwithstanding the use of a printed blank, the rider prepared by Boland shows that he knew the printed recitals and made them his own; and, though he may not have expected or intended to deceive the insurance company thereby, he did lead his client to make a false affidavit, which cannot be overlooked.

[3] The board, while finding Boland negligent on the third charge, recommended that that charge be dismissed, because "we do not think that an attorney can be disbarred or suspended for a single act of negligence not amounting to gross incompetency." In the briefs filed by his brother practitioners on behalf of Boland, it seems to be assumed that, because the *Attorney General* did not except to this recommendation, the matter is not now here for our decision. We know of no rule or authority for such an assumption. The recommendations of the board are always subject to our approval or disapproval, and though we may decline to examine into findings adverse to the attorney, if he does not except, yet we are never bound to accept a finding or recommendation which does not meet with our approval.

[4] We accept and approve of the facts found by the board upon the third charge, and from these facts we conclude that Mr. Boland was grossly negligent. Not always can an attorney be expected to know the law upon a given subject; but when he is employed to ascertain it, the greater his ignorance, the greater his duty to inform himself. And when, as here, the exact question involved has been more than once decided by the court of last resort of his own state, and the rule is well-settled throughout the United States, it is gross negligence to permit a client to hazard, perhaps, his little all, without any search whatever of the authorities.

[5] The whole record teems with evidence that Mr. Boland is lacking in that finer sense of what is ethical, which is so necessary to real success at the bar, and that a period for reflection and self-examination may be of benefit to him. The recommendation of the board, however, as we find the facts, seems a little too severe —especially so, in view of his previous unsullied record —because a year's suspension would probably entirely break up his business and require him thereafter to begin anew.

With the notoriety of these proceedings, with the censure here given, and with a suspension from practice of ninety days, we think the situation will be adequately met.

It is, therefore, the order and judgment of this court that W. G. Boland be suspended from the practice of law in all the courts of this state for the period of ninety days from and after the filing of this order.

FULLERTON, MAIN, MITCHELL, HOLCOMB, and ASKREN, JJ., concur.

PARKER, J. (dissenting in part)—I concur in the result; but do not concur in the overruling of the board's recommendation of the dismissal of the third charge against the accused.