[No. C. D. 2465. *En Banc.* May 7, 1954.]

*In the Matter of Disciplinary Proceedings Against* JACK STEINBERG, *an Attorney at Law.*[1]

[1]Reported in 269 P. (2d) 970.

*A. Vernon Stoneman,* for board of governors.

*Jack Steinberg, pro se.*

WEAVER, J.—The board of governors of the Washington state bar association has presented to this court for final disposition its recommendation that respondent be suspended from the practice of law for a period of sixty days. The recommendation confirms the report of a trial committee.

The recommended suspension is based upon a finding of the trial committee that respondent violated Canons of Professional Ethics, Canon 27 (34A Wn. (2d) 136), which reads in part, as follows:

"It is unprofessional to solicit professional employment by circulars, advertisements, through touters or by personal communications or interviews not warranted by personal relations."

The trial committee found that respondent sought professional employment by means of letters to the German consul general in San Francisco and the German consul in Seattle, which communications were not warranted by any personal relations or oral retainers received from either of these officials. Further, it was found that this breach of conduct was an aggravated one, in view of the provisions and conditions contained in a reprimand issued to respondent by the board of governors of the Washington state bar association on August 18, 1949, which contained the following:

"WHEREFORE, By reason of the facts and of the law and of the Canons of Professional Ethics, the Board of Governors of the Washington State Bar Association hereby reprimands Jack Steinberg, respondent, for violation of Canons of Professional Ethics numbered 17, 27, 32, and 47, and admonishes Jack Steinberg that he refrain from the practices hereinabove described, and directs respondent to cease and desist from the investigation of probate proceedings in counties

outside of the State of Washington, and that respondent make investigations and reports of probate cases within the State of Washington with a view to ascertaining the names of foreign heirs only upon written authorization of foreign consulates limited to foreign heirs of countries represented by such consulate."

At the outset, we emphasize that the gravamen of the charge against respondent is the *solicitation* of business, contrary to the tenet of the canon of ethics. The charge centers around certain correspondence which we will quote later in this opinion. Respondent is not charged with a violation of the 1949 reprimand, by failing to have the alleged contract of his employment in writing.

Prior to the incidents upon which the charge is based, the mayor of Seattle had appointed respondent judge *pro tempore* of the municipal traffic court. He had occupied the bench on approximately four occasions, prior to June 22, 1952.

On June 22, 1952, respondent held a reception at his home, to which a large number of people were invited. On that day, he telephoned Dr. Gerhard R. Stahlberg, German consul at San Francisco then visiting in Seattle, to invite him to the reception, but could not reach him. Respondent had never met Dr. Stahlberg.

Later that evening, Dr. Stahlberg returned the telephone call. He was unable to attend the reception.

We mention this incident, not because we have given it any weight in considering the charges against respondent, but because respondent claims that Dr. Stahlberg retained him, during this telephone conversation, to represent the interests of German nationals, heirs of estates then in probate in the state of Washington.

On June 28, 1952, Dr. Stahlberg wrote respondent from San Francisco, as follows:

"Consulate General of the          San Francisco, June 28, 1952.
"Federal Republic of Germany
"The Honorable                  .
"Judge Jack Steinberg,
"819-33th Street,
"*Seattle, Washington.*

"Your Honor:

"I should like to express to you once more my sincerest regrets that my excursion to the Snoqualmie Falls prevented me from receiving your kind invitation in time to attend your party. I should have been most gratified to make your personal acquaintance and to meet again Mayor Allan Pomeroy in your house. I hope there will be another opportunity to get in contact with you some day.

"Please convey my respects to the Mayor.

"Very truly yours,
"[signed] Gerhard R. G. Stahlberg
"Consul General"

In response to Dr. Stahlberg's letter of June 28, 1952, respondent, on July 10, 1952, wrote him as follows:

"Dr. Gerhard R. Stahlberg                    July 10, 1952
"German Consul General
"415 Alameda de las Pulgas
"San Mateo, California
"Dear Dr. Stahlberg:

"I have received your very welcome letter of June 28th and was very happy to hear from you. I was very sorry that you were unable to attend our reception for Mayor Allan Pomeroy but I do recognize that my invitation unfortunately did arrive late. However, the Mayor was very happy to hear about you and I did convey your very best wishes to him.

"*As I informed you over the telephone* my specialization is international law. I do conduct a general law practice in addition to my judicial duties on the bench of the Municipal Court.

"At the moment I have in the office the matter of the estate of Joseph J. Miller, King County # 124085. The decedent passed away in Seattle on February 25, 1952 leaving two sisters who each inherit one-half of his $10,000 estate.

"One of the sisters is Anna Senk who resides in Germany.

"The consulates which I represent in the State of Washington generally pay my office a fee of ten percent which is taken out of the legacy in payment of the local representation on behalf of the heir.

"I shall be very happy to await your *further* instructions in connection with this case." (Italics ours.)

Respondent testified, and the trial committee found, that Dr. Stahlberg, or one of his associates, replied to respond-

ent's letter of July 10, 1952. Respondent then wrote the consul general again (probably on July 22, 1952), enclosing a proposed power of attorney to be executed by the German heirs in the Miller estate, to which respondent referred in his letter of July 10th. The members of the German consulate invoked their diplomatic immunity and would not testify, so that the letters received and the copies of letters written by them were not available. Respondent, under conditions not necessary for us to set forth, had destroyed his copies of the letters identified in this paragraph. No criticism attaches to respondent for having done so.

The report of the trial committee was made June 24, 1953. Thereafter, respondent received a letter, dated June 27, 1953, from the German consulate in San Francisco. It identifies and refers to the correspondence which was not available at the trial. Counsel for the bar association stipulated that this letter might be received as an exhibit in this matter and considered. Although the trial committee did not reopen the case, it incorporated the letter of June 27, 1953, in the record, so that it was before the board of governors when it reviewed the record and it is now before this court.

The pertinent portion of this letter reads as follows:

"I confirm the following:

"In response to your letter of July 22, 1952, in which you gave details in the case of the Miller estate, this Consulate General suggested that you should send through this office Power of Attorney to Anna Seng, Germany, whom you had mentioned as one of the heirs. At the same time we informed Anna Seng of her interest in the estate and left it to her to give you Power of Attorney.

"Furthermore, you provided this office with information about the estate of one Adolph Hepp in which several German heirs were involved. I wrote you that I notified the German heirs accordingly and asked you to agree to a fee of 8%. In your answer you complied with this request."

We return to the chronology of the events upon which the charge is based—the solicitation of business contrary to the canon of ethics which we have quoted.

August 22, 1952, respondent wrote the following letter to the German consulate general at San Francisco, to the attention of Dr. Heinrich Liebrecht:

"Dear Dr. Liebrecht:

"Clerks of the Superior Courts of the State of Washington quite often require written proof of representation. May I therefore respectfully request that you adress [sic] a letter similar to the following to me:

" 'Clerks of the Superior Courts of the State of Washington:

" 'Kindly be advised that Judge Jack Steinberg of Seattle, Washington is retained by the German Consulate General to examine probate files in the State of Washington to determine those estates in which there are heirs residing in Germany.'

"It has been a pleasure for me to have been of service to your office thus far."

August 28, 1952, an associate of the consul general, Dr. Liebrecht, replied:

"Dear Mr. Steinberg:

"Thank you for your letter of August 22, 1952.

"I have the honor to mention that a German Consulate will be established in Seattle in a short time. I propose to wait with this matter until the opening of the Consulate.

"It will then be a pleasure to recommend your suggestion to the new consul."

The suggested letter of authority to the clerks of the superior courts was never executed.

Respondent wrote three additional letters: One on November 10, 1952, to the German consul in San Francisco; and two on December 8 and December 23, 1952, to the German consul in Seattle. Each letter called to the attention of the addressee an estate in probate in this state in which a German national or a German charity was interested as a beneficiary.

Each of respondent's letters to the German consul in Seattle opened with this paragraph:

"I am directing this letter to you at the request of the Consul General for Germany at San Francisco who has authorized me to refer probate matters affecting German nationals direct to your office."

These facts are either admitted by respondent, proved by undisputed written instruments, or established by a preponderance of the evidence. From these ultimate facts, the trial committee drew numerous conclusions:

(1) Respondent had not been retained by Dr. Stahlberg, during the telephone conference between them on the evening of June 22, 1952, to represent the interests of German nationals who were heirs in estates which respondent would discover by an examination of probate files, throughout the state of Washington. Respondent and Dr. Stahlberg were complete strangers. It is contrary to experience that the representative of a foreign government would retain an attorney unknown to him during the course of their first telephone conversation, under the circumstances disclosed in this case. This conclusion is supported by the purely social tone of Dr. Stahlberg's letter of June 28, 1952. His statement, "I hope there will be another opportunity to get in contact with you some day," negatives any different conclusion.

(2) It was not true that respondent had "in the office the matter of the estate of Joseph J. Miller," as set forth in respondent's letter of July 10, 1952. Respondent had no association with the Miller estate. It was one found by respondent in the course of his search of the probate files of King county.

(3) Respondent's letter of August 22, 1952, requesting a letter directed to clerks of the superior court which would permit him to inspect probate files, was "untrue and misleading." It is common knowledge that probate files in the office of the clerk of the superior court are public records, open to inspection without authorization.

(4) The first paragraph of respondent's letters of December 8 and December 23, 1952 (quoted *supra*), to the German consul in Seattle, was "untrue and misleading." Dr. Liebrecht's letter of August 28, 1952, did not request respondent to direct correspondence to the Seattle consul, nor did it authorize respondent to "refer probate matters affecting German nationals direct to your office."

(5) Respondent had violated his duties as an attorney and Canons of Professional Ethics, Canon 27.

Respondent has represented himself well and ably in this proceeding. His argument in defense, and in explanation of his actions, is complete and exhaustive. The extensiveness of his objections to the report of the trial committee makes it impractical for us to discuss all of them in this opinion. Generally, they are directed to adverse findings and conclusions made by the trial committee; to findings and conclusions which the trial committee refused to make; to the refusal of the trial committee to incorporate into its findings collateral and incompetent matters having no bearing either in fact or law upon the specific charges in the complaint; and to the admission of alleged incompetent evidence.

We have considered each objection; we have considered the description of the contents of the missing correspondence; we have excluded from our consideration the hearsay evidence introduced.

Reduced to ultimate facts, respondent searched for and found situations which he believed might need legal services. He conveyed the information of the discovered situations to the one having the right to control or influence them. He emphasized his own qualifications and ability to perform the legal services. He quoted his fee for such services. He "awaited further instructions."

From the record, we must conclude, as did the trial committee and the board of governors of the bar association, that respondent violated Canons of Professional Ethics, Canon 27 (34A Wn. (2d) 136), by seeking professional employment by means of letters to the German consul general in San Francisco and the German consul in Seattle, which communications were not warranted by any personal relations. The solicitation was aggravated, in view of the provisions and conditions of the reprimand issued to him on August 18, 1949, by the board of governors of the Washington bar association.

Some regulation of the professional and personal

lives of lawyers is necessary to preserve public confidence in the judicial institution and to protect the courts and public from misconduct. In this jurisdiction, the standard which must be met by those practicing law is set forth in the Canons of Professional Ethics. 34A Wn. (2d) 124 *et seq.* The method by which those standards are enforced is found in Rules for Discipline of Attorneys. 34A Wn. (2d) 177 *et seq.*

■ There is a significant difference between the various sanctions available to deal with misconduct. Rules for Discipline of Attorneys, Rule 10 (34A Wn. (2d) 183), provides that an attorney may be reprimanded, suspended, or disbarred. The basic reason of all disciplinary action—reprimand, suspension, or disbarment—is broad. It is for the protection of the public. It is to preserve public confidence in the judicial system and protect it from misconduct. We said in *In re Little,* 40 Wn. (2d) 421, 431, 244 P. (2d) 255 (1952):

"The final adjudication should provide neither more nor less than the facts fairly require to penalize the offender, deter others, and indicate to laymen and members of the bar that proper discipline will be enforced and the standards of the profession maintained."

One need but examine the former opinions of this court to find that there is no fixed standard by which the result of a disciplinary proceeding can be determined. This court has disbarred an attorney for commission of acts involving moral turpitude *(In re Durham,* 41 Wn. (2d) 609, 251 P. (2d) 169 (1952)); and has disbarred an attorney for a violation of the Canon of Ethics *(In re Arctander,* 110 Wash. 296, 188 Pac. 380 (1920)).

■ "The action to be taken rests within the sound discretion of the court. This discretion is wide, and, as is true in every instance where it has no well-defined boundary, it must be exercised with extreme care and caution to avoid its abuse. Its limits in each case are determined by the evidence then before the court." *In re Little, supra* (p. 431).

In the exercise of our wide discretion to accomplish and satisfy the objectives and reasons for all disciplinary actions,

there is an equal and opposite effect exercised upon the person whose conduct is under examination. The seriousness of the effect upon the individual is in direct proportion to the mode of discipline which is determined. While a simple reprimand may be humiliating to the person receiving it, its consequences cannot be compared with the severity of loss of livelihood which is a result of disbarment. Whether it be reprimand, suspension, or disbarment,

"Its consequence is punitive, unavoidably so, despite the fact that it is not designed for that purpose." *In re Little,* *supra* (p. 430).

The facts of the instant case do not warrant disbarment, and such discipline was not recommended by the trial committee nor the board of governors. Respondent has already been reprimanded for a similar breach of the Canons of Ethics. The previous reprimand proved insufficient to deter respondent. Having failed once, it is indicated that further reprimand would be a useless gesture.

We have left for consideration only the suspension of respondent from the practice of law for a definite period. Not only is suspension authorized by Rules of Discipline of Attorneys, but it is a disciplinary action which has been approved and applied many times by this court, even to the extent of suspension for a period of five years. *In re Bolin,* 132 Wash. 453, 232 Pac. 370 (1925).

It is not necessarily the purpose of suspension to imply that an attorney is unworthy of public trust during the period of suspension, and that thereafter he is again fit to follow his profession. Suspension carries with it an unavoidable punitive consequence, but *proportionately* it is the same unavoidable punitive consequence which results from reprimand or disbarment. It has the salutary effect of giving respondent (as this court said in *In re Boland,* 140 Wash. 148, 160, 248 Pac. 399 (1926)) "a period for reflection and self-examination" which "may be of benefit to him." As we have pointed out before, the purpose of reprimand, suspension, and disbarment is the same. All are necessary

parts of the over-all process of discipline by which the courts maintain high standards of moral and professional conduct.

We adopt the recommendation of the board of governors. It is the order of this court that respondent be suspended from the practice of law for sixty days, commencing on the date this decision becomes final.

ALL CONCUR.

[1]Reported in 269 P. (2d) 967.