[No. C.D. 2430.    En Banc.    March 5, 1970.]

*In the Matter of the Disciplinary Proceeding Against*
KENNETH C. HAWKINS, *an Attorney at Law.**

*Robert O. Wells, Jr.,* for Board of Governors.

*John Gavin* and *Alfred J. Schweppe,* for respondent.

WEAVER, J.—September 1938, Kenneth C. Hawkins was admitted to the practice of law in the State of Washington.

October 14, 1967, the president of the Washington State Bar Association, at the direction of the board of governors,

*Reported in 466 P.2d 147.

filed a formal complaint containing four items of alleged misconduct by Mr. Hawkins. It is alleged that each item constituted breaches of certain Canons of Professional Ethics (CPE) and Discipline Rules for Attorneys (DRA). The complaint prayed for a hearing before a hearing panel as provided by DRA.

After formal answer by respondent Hawkins, an extended hearing was held commencing December 19, 1967, before a duly constituted hearing panel. Respondent was represented by counsel. Eleven witnesses testified; 47 exhibits were admitted in evidence.

June 21, 1968, the hearing panel entered its findings of fact, conclusions, and recommendations. The hearing panel (a) dismissed one item of the complaint; (b) recommended a reprimand on two items; and (c) recommended that respondent be suspended from the practice of law for a period of 2 years on the final charge.

September 28, 1968, the Board of Governors of the Washington State Bar Association approved and adopted the recommendations of the hearing panel.

The complete record is now before this court for consideration and final determination. The findings of fact disclose a disturbing tendency to confuse and intermingle two distinct lines of conduct; those acts Mr. Hawkins committed as a lawyer, and personal activities, reprehensible though they may be, in which Mr. Hawkins engaged. From the record it appears that this proceeding was earmarked from the beginning by emotional charges and countercharges.

■ The object and purpose of disciplinary proceedings was stated by this court in *In re Steinberg*, 44 Wn.2d 707, 715, 269 P.2d 970 (1954):

> The basic reason of all disciplinary action—reprimand, suspension, or disbarment—is broad. It is *for the protection of the public*. It is to preserve public confidence in the judicial system and protect it from misconduct. We said in *In re Little*, 40 Wn. (2d) 421, 431, 244 P. (2d) 255 (1952):
>
> > "The final adjudication should provide neither more nor less than the facts fairly require to penalize the

offender, deter others, and indicate to laymen and members of the bar that proper discipline will be enforced and the standards of the profession maintained." [Italics ours.]

In *In re Purvis,* 51 Wn.2d 206, 223, 316 P.2d 1081 (1957), we considered the purpose of disciplinary actions and quoted with approval from *In re Beakley,* 6 Wn.2d 410, 424, 107 P.2d 1097 (1940):

"Neither disbarment nor suspension is ordered for the purpose of punishment, but wholly for the protection of the public. When a matter such as this comes before the court, the question presented is not: What punishment should be inflicted on this man? The question presented to each of its judges is simply this: Can I, in view of what has been clearly shown as to this man's conduct, conscientiously participate in continuing to hold him out to the public as worthy of that confidence which a client is compelled to repose in his attorney?"

In *In re Little,* 40 Wn.2d 421, 430, 244 P.2d 255 (1952), this court defined the burden the Bar Association must meet and the rights that must be extended to the respondent:

Every doubt should be resolved in his favor, and only upon a clear preponderance of the evidence that the acts charged have been done, *and were prompted by improper motives,* should disciplinary action be taken. The privilege—and it is a privilege, not a right—to practice his profession cannot be lost to the practitioner upon slight evidence. [Italics ours.]

We turn to the two incidents upon which the reprimands are based.

July 1, 1956 respondent Hawkins and Carl L. Loy entered into a partnership to practice law. The agreement was oral. Mr. Hawkins was city attorney for Yakima; Mr. Loy was assistant.

In the latter part of 1960, Mr. Loy learned that two checks made payable to the partnership had been deposited in respondent Hawkins' "client account" and not in the partnership bank account. The hearing panel found that "respondent attorney [Hawkins] claimed [the two checks] were accrued fees and not partnership fees."

As a result of the dispute over the handling of partnership fees and partnership accounting, the partnership was terminated and an accounting made between the partners by a written agreement November 22, 1960. Respondent Hawkins and Mr. Loy, however, continued their joint efforts on certain specific litigation after the partnership was dissolved.

Although the dispute over their financial affairs, which ended in the dissolution of the partnership, had occurred more than 7 years prior to the hearing of the instant proceeding, the trial panel concluded that Mr. Hawkins should be reprimanded because he had violated CPE 22, which provides in part:

> The conduct of the lawyer . . . with other lawyers should be characterized by candor and fairness.

The second reprimand is based upon the following:

Mr. George V. Rankin and Mr. and Mrs. Hawkins were neighbors; their residential properties adjoined. The Hawkins' property stood in the name of Jerold Anne Hawkins; Mr. Hawkins testified that he did not claim a community interest in it.

In 1960, in order to establish a mutually agreeable boundary between the properties, Mr. Rankin and Mrs. Hawkins exchanged deeds to certain small portions of the properties. The deeds were drawn by Mr. Hawkins.

In 1966, the title company informed the executors of Mr. Rankin, who had died in 1965, that there was a question

> of marital status of Jerold Anne Hawkins . . . on May 20, 1950, date of acquiring title. If she was then unmarried, proof of the fact may be made by affidavit, otherwise the present ownership of the community interest of her husband on said date must be determined.

The hearing panel found, based upon the testimony of the lawyer for the Rankin estate, that respondent Hawkins refused to sign a quitclaim deed or any document without first receiving the sum of $1,000. Mr. Hawkins denied that he had claimed $1,000 for his community interest in the property conveyed.

Later, Mr. Hawkins furnished an undated and unacknowledged deed to the property in question. The title company removed the exception from its title insurance.

Apparently, because of Mr. Hawkins' pigheadedness, if such it be, the trial panel concluded that Mr. Hawkins should be reprimanded because he had violated CPE 29, which provides in part:

> He should strive at all times to uphold the honor and to maintain the dignity of the profession and to improve not only the law but the administration of justice.

Without laboring the points further, we have concluded that the reprimands should be cancelled and not given to respondent Hawkins.

■ We do not believe, *in the circumstances of the instant case,* that the candor and fairness between lawyers required by Canon 22 authorized the board of governors to delve into the understandings and misunderstandings that may develop in the internal organization of a law partnership, and to base a reprimand thereon.

■ Assuming that Mr. Hawkins' reluctance to give a corrective deed 6 years after a *personal* transaction between neighbors may be characterized as pigheaded and cantankerous—characteristics that at times might be attributed to many lawyers and judges—we fail to see the relevance of CPE 29, quoted *supra.*

The final charge of professional misconduct against respondent Hawkins springs from a divorce proceeding in which he represented himself. The action resulted in a default divorce from his first wife, Jerold Anne Hawkins, to whom he had been married for 26 years. Their three children were of legal age at the time of the hearing.

Mrs. Hawkins claims that she received no notice of the divorce proceedings; that respondent concealed from her information concerning issuance of the final divorce decree; and that he lived with her as man and wife for 3 months following the divorce decree, although he married his present wife immediately upon entry of the decree.

The formal complaint of the Bar Association is too lengthy to set forth verbatim. It contains a number of

allegations that are not supported by the record or referred to in the findings of fact of the hearing panel.

In short, the material charges of Hawkins' professional misconduct and the findings of the hearing panel, approved by the board of governors, are these: (a) that either by forgery or deceit he obtained his wife's acceptance of service on the divorce summons and complaint and used the document to procure a default divorce decree from the Superior Court for Klickitat County; (b) that he secured his wife's signature on a property settlement agreement by coercion while the divorce was pending; and (c) that when Mrs. Hawkins learned of the divorce and sought legal counsel to vacate the decree and negate the property settlement agreement, he consulted with her and attempted to influence her to dismiss her legal action with prejudice and to discharge her attorney.

We have attempted to separate the issues bearing on respondent's professional conduct, from those issues bearing only on his personal affairs.

April 28, 1966, respondent filed in Klickitat County a summons and complaint praying for a divorce from his wife, Jerold Anne Hawkins. He acted as his own lawyer.

July 27, 1966, he secured a default divorce decree by presenting to the trial court a copy of the summons in the divorce action upon which appeared "Service accepted and copy received this 27th day of April 1966. /s/ Jerold Hawkins."

It is uncontradicted that Mrs. Hawkins flew to New York City on April 25, 1966 where she remained for about a month; she was not available to accept service of the summons on the date it bears.

October 27, 1966, counsel for Jerold Anne Hawkins filed a motion to vacate the July 27, 1966 divorce decree. In opposition to the motion, respondent filed an affidavit in which he attempted to explain the date of April 27, 1966 on the signed acceptance of service by stating:

That if there be any error of dates, these were mistakes of the scrivener, and not of affiant.

Respondent testified before the hearing panel, however, that it was he who drafted and typed the complaint and acceptance of service which his former wife purportedly signed.

The board of governors and the hearing panel found that service did not occur on April 27, 1966:

> That if service of said summons and complaint upon the defendant [Jerold Hawkins] was ever accomplished, it was not accomplished on April 27, 1966, but may have been on July 21, 1966.

■ In placing the acceptance of service bearing a false date before the court in the divorce proceedings respondent violated the Canons of Professional Ethics and his oath as a lawyer.

The Klickitat County divorce proceeding was reopened. February 10, 1967, respondent Hawkins appeared pro se and Jerold Anne Hawkins appeared in person and by counsel; the court granted a divorce to both parties "effective nunc pro tunc as of July 27, 1966." A new property settlement agreement was approved and confirmed and Jerold Anne Hawkins was allowed a substantial attorney's fee.

It would add nothing to detail the charges, counter-charges and inconsistencies developed by 462 pages of testimony. Two additional violations of the Canons of Professional Ethics, however, rise from the confusion.

It is undisputed that on July 21, 1966 respondent Hawkins, as a lawyer, convinced his wife that she should sign a property settlement agreement dividing their property. He had prepared the agreement; he knew his wife was not represented by counsel. This constituted a breach of CPE 6, which provides:

> It is unprofessional to represent *conflicting interests,* except by express consent of all concerned given after a full disclosure of the facts. [Italics ours.]

In these circumstances, we cannot say that consent was clearly given after a full disclosure of the facts, although we express no opinion upon the fairness or unfairness of the agreement.

Jerold Anne Hawkins finally secured her own legal counsel. Respondent Hawkins continued to represent himself in the divorce proceedings.

Although there is conflict in the testimony, there is substantial evidence to support the finding of the hearing panel that

respondent attorney frequently and repeatedly, and without notice to [counsel for Mrs. Hawkins] or any of his associates, communicated directly with Jerold Anne Hawkins, advising her as to her legal position and rights, and encouraging her to dismiss her motion [to set aside the divorce decree of July 27, 1966]˙ and discharge her attorneys, preparing a letter for her signature purporting to discharge her attorneys, and preparing and submitting for her signature amended property settlement agreements.

We are aware of the fact that Mrs. Hawkins' letter of November 1, 1966 discharging her lawyer (which discharge proved to be temporary) is in her handwriting; however, we believe it significant that the letter asks counsel to dismiss her motion to vacate the divorce decree "with prejudice." She testified respondent instructed her to and insisted that she insert the words just quoted.

These facts support the conclusion that respondent breached CPE 9:

A lawyer should not in any way communicate upon the subject of controversy with a party represented by counsel; . . .

In summary, we strike down the two reprimands; we affirm the conclusion that respondent Hawkins violated the Canons of Professional Ethics in the three instances we have discussed. We have considered the various motions made by respondent Hawkins and find them without merit.

One need but examine the former opinions of this court to find that there is no fixed standard by which the results of a disciplinary proceeding can be determined. *In re Steinberg*, 44 Wn.2d 707, 269 P.2d 970 (1954).

In conclusion, we suspend Kenneth C. Hawkins from the practice of law for a period of 18 months to commence June 1, 1970.

We confirm the statement and supplemental statement of costs claimed by the Washington State Bar Association pursuant to DRA 7.1 *et seq.*

HUNTER, C. J., ROSELLINI, HAMILTON, and HALE, JJ., concur.

FINLEY, NEILL, and McGOVERN, JJ., concur in the result.

April 28, 1970. Petition for rehearing denied.