[No. C.D. 2430.    En Banc.    November 16, 1972.]

*In the Matter of the Disciplinary Proceeding Against*
KENNETH C. HAWKINS, *an Attorney at Law.*

*Jack P. Scholfield,* for Board of Governors.

*Elwood Hutcheson,* for respondent.

ROSELLINI, J.—This matter is before the court upon a petition of the Washington State Bar Association for an order to show cause why the respondent should not be adjudged in contempt of this court's order, entered March 5, 1970 (*In re Hawkins,* 77 Wn.2d 777, 466 P.2d 147 (1970)), suspending him from the practice of law for a period of 18 months beginning June 1, 1970. After the order to show cause was issued, the matter was referred to a hearing panel of the bar association to determine the facts.

The record and the findings of the panel are now before us.

From these, it appears that the respondent's listing as an attorney was continued in the Yakima telephone directory published for the year October 1970 to October 1971, although he had an opportunity to withdraw that listing after he was notified of his suspension; that a resident of Yakima, needing the services of an attorney, found his name in the directory and called him; that she was given an appointment and was directed by him to his unmarked office and that she went to the office and discussed her legal problem[1] with the respondent; that he failed to advise her that he was not authorized to practice law and could not give her advice, but instead led her to believe that he would assist her; that he made no efforts in her behalf but failed to so advise her when she inquired as to what results he had obtained; and that after several telephone calls to his office, she engaged the services of another attorney and learned for the first time that the respondent was not authorized to practice law in the state of Washington. It also appears that the respondent did not charge or collect a legal fee from this woman.

It is the position of the bar association that by his conduct in failing to change his listing in the telephone directory, in failing to advise a prospective client that he was not authorized to practice law and in allowing her to believe that he would write a letter or give her other legal assistance, the respondent held himself out as entitled to practice law and thereby violated this court's order of suspension.

RCW 2.48.180 provides:

> Any person who, not being an active member of the state bar, or who after he has been disbarred or while suspended from membership in the state bar, as by this chapter provided, shall practice law, or hold himself out as entitled to practice law, shall be guilty of a misdemeanor: *Provided, however,* Nothing herein contained

---

[1]The woman desired to have legal assistance in the collection of a rental payment of $125 allegedly owed to her by persons then resident in Idaho.

shall be held to in any way affect the power of the courts to grant injunctive relief or to punish as for contempt.

The statute makes clear that holding oneself out as entitled to practice law constitutes contempt of an order of suspension. *See also People ex rel. Colorado Bar Ass'n v. Humbert,* 86 Colo. 426, 282 P. 263 (1929) and *State ex rel. Patton v. Marron,* 22 N.M. 632, 167 P. 9 (1917), and cases cited therein.

■ The respondent takes the position that no harm resulted from this particular incident, since he rendered no services and charged no fee. We find this argument untenable. Under CPR DR6-101(A)(3), the code of professional conduct declares that a lawyer shall not neglect a matter entrusted to him.

In *In re Vandercook,* 78 Wn.2d 301, 474 P.2d 106 (1970), we said at page 304:

A lawyer owes "entire devotion to the interest of the client." CPE 15. He should, with reasonable dispatch and industry, employ all honorable means available within the law and the ethics of the profession to advance his client's interest and protect his client's rights. An attorney owes a duty of punctuality—not only to the courts and public but to his client. CPE 21. Procrastination and delay in handling of legal affairs not only induces a client to lose confidence in his attorney but reflects badly on the profession and the courts, and may foster an impression in the public mind that the highly-vaunted standards of professional ethics are no more than a sham. Accordingly, continuing and protracted delay and procrastination in the performance of a lawyer's services and discharge of his duties, whether it be in advancing a cause in the courts or handling his affairs in the office, even if done without moral turpitude, do in one degree or another amount to a course of conduct which demonstrates, for the time being at least, a qualified lack of fitness to practice law.

*See also In re Talbot,* 78 Wn.2d 295, 474 P.2d 88 (1970).

The testimony of the prospective client in the record before us shows that the respondent's conduct did indeed produce an unfavorable impression upon the mind of that

member of the public, and understandably so. The frustration suffered by a client whose attorney procrastinates must indeed be magnified many times when the "client" learns that the "attorney" was in fact not authorized to practice law and never intended to render any legal services.

Having permitted and encouraged the "client" to believe that he was authorized to and would give her legal assistance, the respondent cannot be heard to say that his conduct was excusable because he did not do that which he would have been obliged to do, under the circumstances, had he been authorized to practice law.

■ The basic purpose of all disciplinary action—whether reprimand, suspension, or disbarment—is to protect the public from misconduct of attorneys and to preserve public confidence in the judicial system. *In re Steinberg*, 44 Wn.2d 707, 269 P.2d 970 (1954).

If a suspended attorney leads a member of the public to believe that he is authorized to and will render him legal services, he not only injures the prospective client but casts doubt upon the integrity of the profession. For these reasons he is forbidden to hold himself out as entitled to practice law.

■ In this connection, the exercise of impeccable good faith requires that a suspended attorney change his listing in directories such as the telephone directory if he has notice that such a directory will be published during his suspension. Here the respondent knew that a new directory would be published in the fall of 1970, and in fact on May 31, 1970, he ordered that his address be changed in the directory, but gave no directions concerning his professional listing. He declares that this was due to oversight or inadvertence, but we find it difficult to conceive that the suspension order was not present in his mind on the eve of its effective date.

The record and the findings also show that the respondent received, during the first few months of his suspension, monthly retainer payments from a client, the Roza

Irrigation District. These payments were stopped after the district was asked by a representative of the state bar association to discontinue them.

The district had an oral contract with the respondent which was renewed each year, whereby he was paid a monthly retainer fee, for which he was to perform no legal services but was to hold himself in readiness to render services when asked to do so. He was, however, expected to attend board meetings of the district. For any legal services actually performed, the respondent was paid additional fees.

▮ After the order of suspension, the respondent attended some meetings of the board but gave no legal advice. He told the board of his suspension but did not advise it to discontinue the retainer payments. Being in doubt as to its obligations under the oral contract, the client continued to make the payments until it was told that the payments were being made in error.

A retainer is a fee which a client pays when he retains an attorney to act for him, and thereby prevents him from acting for his adversary. Black's Law Dictionary 1479 (4th rev. ed. 1968); *see Right of attorney to retaining fee,* Annot., 21 A.L.R. 1442.

At the hearing conducted in this proceeding, the chairman of the board of the Roza Irrigation District and the manager both testified that it was their understanding that the retainer was to be paid to the respondent to assure that he would be available when legal services were needed and to prevent his representing others who might be adversaries of the district. After the respondent was suspended from the practice of law, he could no longer render those services nor could he represent an adversary of the client. Thus the payments made to him during the period of his suspension were without consideration and the respondent was not entitled to receive them.

The record is devoid of any evidence that the respondent ever explained the status of his contract to his client. He continued to accept the payments on the retainer contract

and made no attempt to disabuse the board of its notion that it was possibly obliged to continue the payments even though the respondent could render it no legal services. The respondent stated that when he accepted the payments, he regarded them as compensation for past services. He did not so advise the district, however, and he admitted that this client owed him no fee for past services.

By his own testimony, the respondent was aware that he was not entitled to accept a retainer fee, and he does not suggest now that he had a legal right to receive these fees under the retainer contract. We think that under such circumstances, the respondent, in the exercise of good faith, had a duty to advise the client that he was not entitled to receive retainer fees. If there was any doubt in his mind upon this score, we feel safe in assuming that he could have obtained advice upon this matter from the ethics committee of the Washington State Bar Association; and had he done so, and acted according to that advice, his good faith could not now be questioned.

Implicit in this court's order of suspension was a direction that the respondent advise his clients that he could not represent them during the period of suspension and could not be paid any fees which were not already earned. While the respondent did advise the Roza Irrigation District that he had been suspended, he failed to advise it of the effect that that suspension would have upon the retainer arrangement. He allowed the client to assume that it was still under obligation to him under that arrangement, even though he knew or should have known otherwise.

In *In re Vandercook, supra*, we said that an attorney who has withdrawn from a case after accepting a retainer is obliged to refund any portion of the retainer which he has not earned, citing CPE 44. This rule is now embodied in CPR EC 2-32.

The respondent is ordered to refund, if he has not already done so, those retainer payments which covered periods during which he was suspended and unable to perform legal services for the Roza Irrigation District had he

been called upon for such services, and to file with this court the district's acknowledgement of receipt thereof within 30 days after this order becomes final.

For those acts and omissions described herein, whereby the respondent held himself out as entitled to practice law in this state, a formal reprimand shall issue.

The respondent is further ordered to pay the costs of this proceeding.

HAMILTON, C.J., FINLEY, HUNTER, HALE, NEILL, STAFFORD, WRIGHT, and UTTER, JJ., concur.