[No. C.D. 2430. En Banc. January 5, 1979.]

*In the Matter of the Disciplinary Proceeding Against* KENNETH C. HAWKINS, *an Attorney at Law.*

---

*Robert T. Farrell,* for Bar Association.

*Perry J. Robinson,* for respondent.

UTTER, J.—Mr. Kenneth C. Hawkins, the respondent attorney, was admitted to practice in this state in 1938. He appears before this court upon a unanimous recommendation of disbarment by the Disciplinary Board of the Washington State Bar Association. We concur with that recommendation and order that Mr. Hawkins be disbarred.

The charges which bring the respondent before this court arise from his actions during the probate of the estate of George L. Bock. The respondent drafted a will in 1962 for Mr. Bock in which the testator left his entire estate to Father Flanagan's Boys' Home (Boys' Town) in Omaha, Nebraska. The respondent was named as executor in the will and was so appointed upon admission of the will to probate on Mr. Bock's death in 1966. The gross value of the estate at that time was approximately $14,000, including savings of about $10,000 and a small home sold early in 1967 for approximately $4,000. There were also a few personal items of insignificant monetary value. The hearing panel and board found that all of the assets of the estate were in the form of cash ready for distribution by December 1967.

The estate was not closed until some 9 years had passed, and the disciplinary board had initiated the investigation leading to these proceedings. Then, and only then, in December 1976, did the respondent close the estate and tender a check to Boys' Town in the amount of $10,313.60.

The whereabouts of the estate assets during the intervening 9 years is of special importance. The main part of the estate, in the amount of $9,839.19 (including accrued interest) was held in a Home Federal Savings account until 1970. An additional part, in the amount of $1,995.77, was in the "Estate of George L. Bock by Kenneth C. Hawkins" account at National Bank of Commerce (now Rainier Bank). The respondent withdrew the latter amount on August 20, 1970, leaving the trust account empty. He similarly emptied the savings account on August 24, 1970, though these funds he immediately placed in the trust account. The bank records show that 3 days later, on August 27, 1970, the trust account was again emptied and closed. Only the respondent had authority to withdraw the funds.

Six years later, after institution of the bar's investigation, respondent deposited $8,050 of his own funds into a trust account at the Rainier Bank in Yakima. On December 16, 1976, these funds, together with other personal funds of respondent, were used to purchase a cashier's check, which in turn was delivered to Boys' Town in a final distribution of Bock estate assets.[1]

Respondent argues the testator had orally requested him to delay distribution of the estate until he was satisfied Boys' Town was satisfactorily dispensing services to needy

---

[1]The board found this distribution to be inadequate, in that it concluded the respondent improperly retained certain funds connected with the sale of the testator's house and a very substantial amount respondent contended was due him as attorney in two cases to which the testator was a party. Respondent argues the distribution was complete and the board's finding to the contrary does not reflect competent evidence presented in its hearing of the matter. The bar association appears to have abandoned its argument on this issue and we will not consider it in making our determination as to the appropriateness and extent of discipline here.

children, there being an earlier cloud over the institution's financial management, and that his determination in late 1976 to finally distribute the proceeds of the estate was in compliance with these instructions and merely coincidental to the board's investigation of his conduct. He denies converting estate funds to his own use and asserts the other evidence against him reflects an error by the bank in record keeping.

The disciplinary board rejected the respondent's arguments in finding that he had improperly delayed in making the necessary distribution, and that in 1970 he had converted the estate funds to his own use.

The board concluded that respondent had violated numerous canons. He engaged in illegal conduct involving moral turpitude ((CPR) DR 1–102(A)(3)); he engaged in conduct involving dishonesty, fraud, deceit and misrepresentation through conversion of moneys in the estate of George L. Bock to his own use ((CPR) DR 1–102(A)(4)); he neglected a matter entrusted to him ((CPR) DR 6–101(A)(3)); he failed to deposit client's funds in one or more identifiable bank accounts maintained in the state in which his law office is situated ((CPR) DR 9–102(A)); he failed to maintain complete records of all funds of a client coming into his possession and render proper accounts to his client regarding them ((CPR) DR 9–102(B)(3)); he failed to pay or deliver to the client funds in his possession which the client was entitled to receive ((CPR) DR 9–102(B)(4)); and he violated his duties as an attorney required of him under canons 11 and 12 of the Canons of Professional Ethics then in effect in his neglect of the Bock estate and misuse of funds which he held in trust as executor of the estate prior to January 1, 1972. DRA 1.1(c).

The respondent makes numerous objections to the findings and conclusions of the board. His most serious challenge goes to the heart of the charge of neglect, delay, and conversion of the Bock estate funds. In essence he argues that there is insufficient evidence to sustain the board's findings. We disagree.

The board had before it evidence of extraordinary delay in the closing of the estate. Respondent initially explained that the "press of business" prevented him from closing the estate for some 9 years. Then, on the eve of the hearing, he claimed that the testator had orally instructed him to delay closing and distribution. The will, which the respondent himself had drafted for Mr. Bock, reflects no suspicion of the testator toward the management of Boys' Town. The only independent evidence of fiscal mismanagement at the institution appears to be in a 1972 newspaper article which appeared 6 years after the testator's death.

The estate accounts were withdrawn and closed in 1970 with no adequate explanation of why this action was taken or tracing of where the funds had gone. The respondent's contention of a bank error in bookkeeping is cast in doubt by his own failure in the ensuing 6 years to inquire as to the whereabouts of the estate funds for which he was responsible.

The estate was eventually closed with funds hastily gathered by the respondent just after initiation of the disciplinary investigation. Taken together these facts fully support the findings and conclusions of the disciplinary board.

The respondent additionally charges the board erred in including in its findings a statement of his prior disciplinary history. Far from being in error, such a statement is mandated by DRA 3.1(b)(1) and (2). The board did not consider the respondent's previous misconduct in making its findings, and specifically noted that "[n]one of the Conclusions is based upon the fact that respondent has received a previous suspension and reprimands. These are regarded as entirely separate matters from which no conclusions are drawn except that the suspension and reprimands have occurred." This court, however, may consider any relevant facts and circumstances in determining the discipline appropriate to a charge of attorney misconduct. *In re Greiner*, 61 Wn.2d 306, 378 P.2d 456 (1963).

The respondent next urges that he has been denied due process of law by the procedure followed here. On

November 2, 1976, a letter was sent to respondent indicating that a complaint had been made against him to the Washington State Bar Association and that the complainant was David H. Putney. On January 12, 1977, respondent gave his deposition. On January 14 a formal complaint was filed and on January 18, 1977, served on respondent. Upon petition by the bar association, on February 10, 1977, this court ordered the respondent's suspension from practice pending resolution of the charges against him. These charges and all pertinent testimony offered by both the respondent and the bar came before the hearing panel on February 28, 1978. The hearing panel filed its findings, conclusions and recommendation on June 21, 1978. The disciplinary board reviewed the transcript and record in the case, including the respondent's statement in opposition to the findings and supplement thereto, and on July 28, 1978, adopted the hearing panel's findings, conclusions, and recommendation without modification.

■ Respondent argues that the taking of his deposition prior to the filing of formal charges violated his right to due process. *In re Ruffalo*, 390 U.S. 544, 550, 20 L. Ed. 2d 117, 88 S. Ct. 1222 (1968), establishes that disbarment, while designed to protect the public, is nonetheless a punishment or penalty imposed on the lawyer. Accordingly, the lawyer is entitled to procedural due process which includes fair notice of a charge and an opportunity to be heard. While respondent's argument is not clearly made in his brief, we assume it is that respondent, at the time of his deposition, did not know the specific nature of the charges against him. If this is indeed respondent's contention, we note that no objection was made by him at the time the brief deposition was taken. In *Ruffalo*, objection to the alleged violation of due process was made in a timely manner. We find respondent's failure to take exception to the bar procedure at the proper time dispositive of the issue.[2]

---

[2]We do not reach the question of the procedure's constitutionality were a timely exception made. We note, however, that the issue is different than that

Finally, respondent charges unconscionable delay in the proceedings by the bar association. An examination of the record reveals it was respondent and his attorney, rather than the bar association, who were primarily responsible for any delay in these proceedings. His complaint is without merit.

Our review of the evidence in the record establishes that the board's findings accurately describe respondent's conduct in handling the estate funds entrusted to him. These in turn support the conclusions made by the board, and we find that the respondent did indeed breach the indicated disciplinary rules.

█ In contrast to the circumstances existing in *In re Kumbera,* 91 Wn.2d 401, 588 P.2d 1167 (1979), where we found most of those factors causing a court to be lenient in disciplinary cases to be present, the circumstances here demonstrate the necessity for more stringent discipline. First, respondent has a history of misconduct. In *In re Hawkins,* 77 Wn.2d 777, 466 P.2d 147 (1970), this court ordered him suspended from the practice of law for 18 months, and in *In re Hawkins,* 81 Wn.2d 504, 503 P.2d 95 (1972), the court ordered him reprimanded. Two additional reprimands have been issued against him, in 1972 and 1974. His conduct has shown a lack of remorse, a failure to cooperate with the bar association in its investigation, and a continuing failure to acknowledge and recognize the seriousness of his violations and his breach of trust. We concur with the recommendation of the disciplinary board that Mr. Hawkins be disbarred and so order.

Additionally, we order that costs be assessed against the respondent in the amount of $4,660.53, these funds to be

---

addressed in *In re Ruffalo,* 390 U.S. 544, 550, 20 L. Ed. 2d 117, 88 S. Ct. 1222 (1968). There the contested charge was raised for the first time late in the disciplinary hearing itself. While the respondent was given time to respond to the new charge, his own prior testimony at the hearing, submitted to rebut existing charges, ultimately served as the basis for his discipline. Here the initial deposition was in the nature of discovery, with the respondent fully aware the bar was investigating alleged impropriety in his management of the Bock estate.

504

paid to the bar association prior to any petition by the respondent to this court for reinstatement.

WRIGHT, C.J., and ROSELLINI, HAMILTON, STAFFORD, BRACHTENBACH, HOROWITZ, DOLLIVER, and HICKS, JJ., concur.

Reconsideration denied March 14, 1979.