## IN THE MATTER OF SYDNEY VALE STOLDT, AN ATTORNEY-AT-LAW.

Argued February 6, 1962.—Decided May 22, 1962.

*Mr. Henry J. Bendheim* argued the cause for the Bergen County Ethics Committee.

*Mr. John E. Selser* argued the cause for respondent.

PER CURIAM. On March 20, 1961, petitioner, a member of the bar of this State, was suspended from practicing law for a period of six months. *In re Stoldt,* 34 *N. J.* 355 (1961). At the end of that period, he applied for reinstatement and, in accordance with customary procedure, the matter was referred to the Bergen County Ethics Committee for consideration and report. Hearings were held, following which the Committee recommended that the application be denied.

The adverse report was made because of certain activity by Stoldt during the period of suspension which the Committee regarded as violative of *R. R.* 1:18–2(*b*). That rule provides:

"No attorney shall employ *in his law offices* any attorney who was disbarred or suspended after January 1, 1953, during the period of such suspension, nor shall any attorney permit or authorize any such disbarred or suspended attorney *to perform any services for him in the practice of law,* * * *." (Emphasis added)

At the hearings before the Committee, Stoldt volunteered the information that during his suspension he had made four or five title searches for his son, Sydney Vale Stoldt, Jr., who is also a member of the bar of this State, practicing in Bergen County.

The testimony respecting these searches is clear. Stoldt acted solely as an abstractor; he set up the instruments as they appeared in the records and turned the search with the index work over to his son. He refrained from expressing any opinions upon questions of title. Such limited activity does not constitute practicing law, and so cannot support a conclusion that either Stoldt or his son trespassed upon $R.'R.$ 1:18–2($b$).

The proof likewise reveals that immediately upon suspension, Stoldt withdrew from the office where he had been engaged in the practice of law with his son, and removed all evidence that he was an active member of the profession, or in an way associated with his son at that address or elsewhere. Since the date of the order of this court, his son has occupied the office exclusively and Stoldt has never entered it. Moreover, he notified all his clients that he was no longer engaged in the practice of law. There is no proof that since March 20, 1961, he has acted in any way in the professional capacity of a member of the bar.

Stoldt, his wife, and Stoldt, Jr., who is unmarried, reside together. It was at home that Stoldt, Jr. asked his father to make the searches in question, and the completed work was delivered to the son there. We find nothing in the record to cast doubt upon the credibility of the testimony in this respect. Such contact between father and son does not constitute employment "in the law offices" of the son within the contemplation of $R. R.$ 1:18–2($b$).

Another complaint of unethical conduct was pending against Stoldt at the time of his suspension from practice. It related to a transaction that took place between June and November 1958, involving the purchase of capital stock of a corporation which operated a tavern. A dispute arose

among the individuals participating in the acquisition, and the parties on one side of the controversy made charges of improper activity on the part of Stoldt. Hearings were held thereon subsequent to the order of suspension, and a majority of the members of the Ethics Committee exonerated him. Two members filed a dissenting report.

In the course of the Committee report on the tavern acquisition matter, the majority noted that Stoldt, at the request of one of the parties, took her stock in his name as a temporary nominee or trustee for her. The trust relationship was not noted on the stock certificate, however. The stock was placed in Stoldt's name because the purchaser was endeavoring to determine whether she might have a liability for commissions to any broker other than the one who had consummated the particular transaction for her. Stoldt acceded to her request to avoid embarrassment 'for other stockholders, the understanding being that if any such liability appeared, the broker who was being paid commissions as the producing agent, would share them with the other broker. On the date of closing of the stock purchase, June 25, 1958, after the certificate had been put in his name, Stoldt notified the Borough of Moonachie and the Alcoholic Beverage Commission by letter of the change in ownership of the tavern corporation stock, listing himself as owner of the trust shares. Aside from the question whether under the particular circumstances such notice was required (see *R. S.* 33:1–34), shortly thereafter, the commissions contingency having been resolved, Stoldt corrected the Borough and Alcoholic Beverage Commission records.

The majority of the Ethics Committee found that the registration of the stock in Stoldt's name was done in good faith and not for the purpose of defrauding anyone. The minority considered the course pursued as unprofessional conduct. Our examination of the record satisfies us that the conclusion of the majority was justified and that disciplinary action is not warranted. It must be said, however, that the notification to the Borough and the Alcoholic

Beverage Commission of Stoldt's ownership of the stock without explanation or reference to the trust character of his title was improper and represented a mistake of judgment fairly open to criticism.

On the entire record, we find no substantial basis for refusing Stoldt's application for reinstatement. Accordingly, such an order may be entered.

*For granting reinstatement*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*Opposed*—None.