190 So.2d 173 (1966)
THE FLORIDA BAR, Petitioner,
v.
L. James KEEHLEY, Respondent.
No. 35042.
Supreme Court of Florida.
September 21, 1966.
*174 Edward I. Cutler, Tampa, and E. Martin McGehee, Tallahassee, for The Florida Bar, petitioner.
Edward L. Garnett, Tampa, for respondent.
PER CURIAM.
The cause is before us on petition of The Florida Bar charging respondent with the unauthorized practice of law, respondent's reply to rule to show cause, stipulation of the parties and report of the referee, Circuit Judge Victor O. Wehle. We set out verbatim the Referee's Report:
"TO THE HONORABLE CHIEF JUSTICE AND JUSTICES OF THE SUPREME COURT OF FLORIDA:
"The Florida Bar filed its petition charging the respondent, L. James Keehley, with the unauthorized practice of law in the formation of corporations and otherwise. The respondent replied, admitting that he had formed two corporations and performed certain acts as a business broker and business consultant, but asserted that it is not compulsory that an attorney prepare certificates of incorporation and denied that he was guilty of the unauthorized practice of law. The undersigned Circuit Judge was appointed Referee to try the issues and to report has (sic) findings of fact, conclusions of law and recommendations for final disposition of the cause, pursuant to Article XVI of the Integration Rule of the Florida Bar [31 F.S.A.].
"The matter was submitted to the Referee upon the pleadings, depositions, exhibits, stipulation of the parties, and arguments of counsel for both parties. The essential facts are undisputed and the issues of law are uncomplicated.
"Respondent is not a lawyer and has not held himself out to be a lawyer. Before coming to Florida, he had for many years been engaged by the United States of America in performing services which entailed familiarity with contract documents and business procedures. Since coming to Florida about five years ago, he has been engaged in business as a business broker and business consultant.
"In 1962, he inquired of the Secretary of State and was informed that `it is not compulsory that an attorney prepare certificates of incorporation.' About the same time he researched questions of law pertaining to joint tenancies. During the same year he prepared articles of incorporation for business associates or prospective business associates and himself *175 in Southern Technical (or southern Tech) Electronics School, Inc., which were submitted to a member of The Florida Bar for approval before they were utilized by the incorporators. Armed with this experience, he formed two corporations in Florida during the year 1965. One was Stewart and Coffey Enterprises, Inc., in which the incorporators were his business associates, William M. Stewart, Mr. Stewart's wife, and Mr. Stewart's father-in-law, Guy W. Coffey. The other was James Corjay, Incorporated, in which L. James Keehley, the respondent, Coreene A. Keehley, his wife, and Jay T. Keehley, their son, were the incorporators. In submitting the articles of incorporation which he had prepared, respondent in each instance wrote to the Secretary of State that `the writer will assure a corporate meeting is held to approve the by-laws and otherwise finalize the organization of the company as required by Florida Statutes.' The amounts which each incorporator agreed to subscribe ranged from $500.00 to $2,450.00. Stock certificates were issued to the subscribers and their respective spouses in each corporation `as joint tenants with right of survivorship'. None of the incorporators realized that, by signing the articles of incorporation, they had committed themselves to subscribe to the stipulated amounts and none of them had made the agreed investments in the corporations, nor were they aware of the gift, gift tax and other implications of taking title to the stock certificates as joint tenants.
"Respondent was not aware, prior to the complaint resulting in these unauthorized practice of law proceedings, of the decision in The Florida Bar v. Town, 174 So.2d 395, (sic) in which this Court last year decided that the preparation of corporate charters and related documents constitute the practice of law. However, respondent points out that in the Town Case the respondent had charged a fee for his services, whereas the respondent in the present case made no charge for forming the two corporations, and further that these two corporations were formed for friends and family, with an interest or prospective interest on the part of respondent himself in both ventures. It is the referee's conclusion that neither the absence of compensation, nor the close personal relationship between the respondent and the persons for whom the services were rendered, nor his present or prospective future interest in the transaction, legalizes his formation of these corporations, and his services which undoubtedly constitute the practice of law in connection with these corporations. It is equally inimical, dangerous and contrary to the welfare of the public to permit untrained and unqualified persons, who have not been admitted to The Florida Bar, to perform such services for individuals who desire to incorporate and to operate as corporations under the Florida law, whether a fee is charged, whether the parties are closely related, or whether the untrained person is one of the interested parties.
"In his capacity as a business consultant and business broker, or as an associate of a business broker operating in Tampa, Florida, respondent admittedly has prepared listing agreements, agreements of sale in the form of deposit receipts, bills of sale, general affidavits and other documents, usually by filling in the blanks upon printed forms and tailoring each of these forms to the circumstances of the individual transaction. These services were performed at the request or under the direction of the broker and in some, but not all, instances were reviewed by members of The Florida Bar representing sellers or buyers or both. Respondent states that in doing so he relied upon the office procedures which he encountered when he became associated with a business broker in Tampa, and also he urges that real estate brokers prepare comparable documents.

*176 "While there may be real estate brokers who are violating this Court's decisions in Keyes Co. v. Dade County Bar Ass'n., 46 So.2d 605, and Cooperman v. West Coast Title Company, 75 So.2d 818, it is clear from both of those decisions that real estate brokers may prepare listing agreements and deposit receipts or other forms of agreement first bringing the buyer and seller together; they may not as brokers complete conveyancing forms such as deeds, mortgages, notes, assignments and satisfaction of mortgages or other documents required to consummate the contract. The preparation of bulk sales affidavits, as well as other acts in compliances (sic) with the bulk sales law, are beyond the province of the broker: Cooperman v. Guarantee Abstract Co. (No. 2), 5 Fla. Supp. 38, 42. Business brokers and their associates and employees are similarly prohibited from preparing any documents in connection with the sale of businesses other than listing agreements and deposit receipts or other initial contracts bringing the buyers and sellers together. If respondent is aware of instances of the unauthorized practice of law by real estate brokers, salesmen and employees, he should bring them to the attention of the proper authorities, but he cannot rely upon them as effecting any change in the applicable law.
"Respondent has indicated his good faith by demonstrating that he relied on the Secretary of State's communication to him in 1963 regarding the preparation of articles of incorporation, upon the office procedures to which he was exposed in a business brokers office, and what he has observed being done by other brokers, and he has assured The Florida Bar and the Court that he has no intention in the future to prepare any articles of incorporation, by-laws, minutes or stock certificates for others or to advise on the legal effect of joint tenancies, or to prepare any documents for others in connection with the purchase and sale of businesses with the possible exception of listings and deposit receipts, or to give any legal advice or otherwise engage in the practice of law. The Florida Bar's representatives state that they have no reason to disbelieve respondent, nor does the Referee.
"Accordingly the following recommendations are made for final disposition of the cause:
"1. That respondent be enjoined from forming corporations, including the preparation of charters, by-laws, resolutions, stock certificates, and other documents incidental to the contractual rights of the corporation, its incorporators, and stockholders, and from advising others in respect thereto.
"2. That respondent be enjoined from advising others on the legal effect of joint tenancies or other types of ownership.
"3. That respondent be enjoined from preparing any documents for others in connection with the purchase and sale of businesses with the exception of listings and deposit receipts or other initial agreements bringing buyers and sellers of businesses together.
"4. That no contempt order be entered against respondent.
 "Respectfully submitted,
 /s/ Victor O. Wehle 
 VICTOR O. WEHLE
 Referee"
The report of the referee is approved and the recommendations adopted. It is therefore, the order of this Court that:
1. Respondent be enjoined from forming corporations, including the preparation of charters, by-laws, resolutions, stock certificates, and other documents incidental to the contractual rights of the corporation, its incorporators, and stockholders, and from advising others in respect thereto.
*177 2. Respondent be enjoined from advising others on the legal effect of joint tenancies or other types of ownership.
3. Respondent be enjoined from preparing any documents for others in connection with the purchase and sale of businesses with the exception of listings and deposit receipts or other initial agreements bringing buyers and sellers of businesses together.
It is so ordered.
THORNAL, C.J., and DREW, O'CONNELL, CALDWELL and ERVIN, JJ., concur.