The COMMITTEE ON PROFESSIONAL ETHICS AND CONDUCT OF the IOWA STATE BAR ASSOCIATION, Complainant,

v.

J. Newman TOOMEY, Respondent.

No. 58875.

Supreme Court of Iowa.

May 25, 1977.

Lee Gaudineer, Des Moines, for complainant.

J. Newman Toomey, pro se.

REYNOLDSON, Justice.

This disciplinary proceeding returns on allegations that respondent, while under suspension from practice, prepared tax returns and wrongfully withheld and commingled a tax client's funds. We find these charges are true and now revoke his license to practice law in Iowa.

In *Committee on Professional Ethics v. Toomey*, 236 N.W.2d 39 (Iowa 1975), we suspended respondent's right to practice law in Iowa for two years commencing January 1, 1976. This suspension resulted from his failure to file state and federal income tax returns, and his two convictions for shoplifting property under $20 in value, violations of § 709.20, The Code.

Our above opinion placed specific restrictions on respondent's activities during the suspension period:

"During such suspension it is ordered *he shall refrain from* all facets of his law practice including but not limited to the examination of abstracts, consummation of real estate transactions, *preparation of* deeds, buy and sell agreements, contracts, wills and *tax returns* as well as any court appearance or counseling clients with regard to the same." (emphasis supplied) —236 N.W.2d at 40.

July 16, 1976, the Committee filed application for order requiring respondent to show cause why he should not be held in contempt of court and have his license revoked. The application alleged respondent was preparing tax returns. A subsequent amendment asserted respondent wrongfully retained a tax client's federal income tax refund and commingled this money with personal funds.

We ordered respondent to appear. Hearings were held before this court on Novem-

ber 10, 1976 and March 9, 1977. Respondent testified and introduced evidence.

I. Respondent admitted he prepared tax returns following his suspension and changed the large sign on his office from "Toomey Law Office" to "Toomey Tax Office." He defends this conduct by asserting he neither received a mailed copy of our prior opinion nor read it in the North Western Reporter. He had discontinued his subscription to the Reporter prior to his suspension.

Respondent's testimony he had discussed continuing his tax practice with one or perhaps two district judges was rebutted by convincing evidence submitted by the Committee.

Although he concedes he knew from news reports he had been suspended, respondent admits he made no effort to obtain a copy of our ruling. He stated, "All I know is what I read in the papers, I guess you would have to say, and perhaps I should have looked for it; but, to be honest with you, when this happened you kind of just get—well, you don't want to look further, I guess."

■ "A person has no right to shut his eyes or his ears to avoid information and then say that he had no notice * * *." 58 Am.Jur.2d Notice § 8, at 491–492 (1971); see *National Labor Relations Board v. Local 3, Bloomingdale, Etc.*, 216 F.2d 285, 288 (2d Cir. 1954). Ordinarily, all parties properly brought into court are chargeable with all subsequent steps taken in the proceeding down to and including the judgment. See, e. g., *Irving Trust Co. v. Spruce Apartments*, 44 F.2d 218, 222 (E.D.Pa.1930); *Meadowbrook Country Club v. Davis*, 384 S.W.2d 611, 613 (Mo.1964); 66 C.J.S. Notice § 12, at 648 (1950). This rule certainly should be applicable to a party who is also a trained lawyer.

■ We hold respondent had constructive, if not actual, knowledge of the terms of our court order he knew existed but elected not to read. We further hold he violated the restrictions laid down in that opinion.

II. We next consider the allegation respondent wrongfully withheld and commingled funds.

It is uncontroverted respondent prepared Joanne Sutton's federal tax return. By placing his address on the return, he received her $730.67 refund in April, 1976. Respondent endorsed Sutton's name on the check and deposited it in his trust account. Immediately thereafter, he wrote a $600 check on the account and cashed it. The record is clear respondent did not pay the refund money (with interest) to Sutton until October 27, 1976, after the Committee launched an investigation concerning it.

Sutton's affidavit alleged she attempted to call respondent by telephone several times concerning her refund. When she finally reached him after a few months, respondent told her the return was being audited and the refund would be delayed several more months. When she could not contact him in August and September (he was in Europe), she called internal revenue service and found her refund had been mailed to respondent in April, 1976.

At the November 10, 1976 hearing, respondent testified he put the money in his trust account. He admitted the balance in the account later dipped below the refund amount. However, he asserted this was unintentional and caused by his son, a lay person whom he had left in complete control of his affairs while he went to Europe.

In a December 7, 1976 affidavit, and in testimony at our March 9, 1977 hearing, respondent presented a different version. He testified his $600 withdrawal left about $130 of Sutton's refund in his trust account, the sum she owed him for tax and other services. Respondent claimed he placed the $600 in an envelope marked "Mrs. Sutton" and placed it in his office safe. September 27, 1976, he deposited the Sutton money in his wife's savings account for "safer preservation," and where it would draw interest.

Attempting to explain why he withheld these funds, respondent claimed he kept the money because Sutton had informed him she was planning to use it to leave her

husband and he wanted to save the marriage. When he returned from vacation, he discovered the Suttons had resolved their marital difficulties and he turned over the refund money.

Under questioning from the bench, respondent could not explain why, if he was merely trying to preserve the marriage, the money was not left in his trust account.

Regardless of his explanations, the evidence clearly shows respondent withheld funds from his client, removed the funds from his trust account, and later commingled them with personal funds in his wife's savings account.

It is readily apparent respondent directly violated several provisions of the Iowa Code of Professional Responsibility for Lawyers. He violated DR 9–102(B)(1) by failing to notify Sutton of the receipt of her tax refund. In fact, he deliberately hid the money from her. He failed to "promptly pay or deliver to the client as requested by a client the funds * * * in the possession of the lawyer which the client is entitled to receive." DR 9–102(B)(4). He did not maintain the money in "identifiable bank accounts" (trust accounts). DR. 9–102(A). Finally, he commingled his client's funds with other funds in his wife's savings account, a violation of DR 9–102(A) and EC 9–5.

■ Commingling of funds in violation of DR 9–102 warrants license revocation, not mere suspension. *Committee on Professional Ethics v. Shaffer*, 230 N.W.2d 1, 2 (Iowa 1975); *Committee on Professional Ethics v. Rowe*, 225 N.W.2d 103, 104 (Iowa 1975); *Committee on Professional Ethics v. Sturek*, 209 N.W.2d 899 (Iowa 1973); see *Committee on Professional Ethics v. Bronemann*, 210 N.W.2d 607 (Iowa 1973); *Committee on Professional Ethics v. White*, 209 N.W.2d 11, 12 (Iowa 1973); *Committee on Professional Ethics v. Kinion*, 206 N.W.2d 726 (Iowa 1973).

Our resolution of the previous issues makes it unnecessary to determine whether respondent endorsed Sutton's refund check without authority, *Committee on Professional Ethics v. Kinion*, supra, 206 N.W.2d 726, or whether his conflicting testimony constituted perjury.

■ The essential question before this court is whether respondent, J. Newman Toomey, is fit to continue as a member of the bar. *Committee on Professional Ethics v. Rowe*, supra, 225 N.W.2d at 104; *Committee on Professional Ethics v. Sturek*, supra, 209 N.W.2d 899. His misconduct as shown by the entire record, including his violation of suspension restrictions and his withholding and commingling of a client's funds, clearly establishes he should be disbarred.

It is therefore ORDERED respondent's license to engage in the practice of law in this state be and is hereby revoked.

LICENSE REVOKED.