The COMMITTEE ON PROFESSIONAL ETHICS AND CONDUCT OF the IOWA STATE BAR ASSOCIATION, Complainant,

v.

Donald E. GARTIN, Respondent.

No. 59764.

Supreme Court of Iowa.

Dec. 20, 1978.

Lee H. Gaudineer, Jr., and Roger J. Kuhle, Des Moines, for complainant.

Thomas M. Walter, Ottumwa, for respondent.

REES, Justice.

This disciplinary proceeding was initiated by the filing of an application for order requiring respondent Donald E. Gartin to show cause why he should not be held in contempt of court for failing to comply with an order of suspension heretofore entered, and to have his license to practice accordingly revoked.

The respondent was licensed to practice law in the various courts of this state, and maintained an office in Mt. Pleasant until November 10, 1976, on which date an order was entered by this court temporarily suspending his license to practice law on the grounds that he had been convicted of a crime, to-wit: perjury. The order of suspension under Supreme Court Rule 118.14 was reaffirmed on December 14, 1976, at which time this court ordered the respondent to refrain from any activity including all facets of the ordinary law practice including, but not limited to, examination of abstracts, consummation of real estate transactions and preparations of deeds, buy and sell agreements, contracts, wills and tax returns.

On August 29, 1977 the complainant Committee on Professional Ethics and Conduct of the Iowa State Bar Association filed with this court an application for an order requiring respondent to show cause why he should not be held in contempt and have his license to practice law in this state revoked, alleging that respondent had continued to practice law and hold himself out to be a lawyer in violation of the suspension order entered on November 10, 1976 and reaffirmed on December 14, 1976. The complainant alleges in its application for order to show cause that respondent has engaged in conduct which constitutes the practice of law in violation of the court's order and specifically alleges that such activities include: (1) the preparation and certification of abstracts affecting title to real estate; (2) the preparation and execution of a court officer's deed and an affidavit of possession as to real estate over which he was conservator; (3) a failure to withdraw as attorney of record as to all litigation in which he was counsel as of November 10, 1976; (4) the continuation of his lawyer professional liability insurance; (5) accompanying former clients to real estate closings; (6) continuing to use his letterhead stationery, statement forms and envelopes which identify the respondent as an attorney in correspondence with both clients and nonclients, as well as continuing to be listed in the yellow pages of the telephone directory and using the same office which he had previously used as a law office; (7) filing a probation report with the Henry County court to discharge a former client from probation; (8) filing a notice of attorney's lien in the district court for fees generated prior to his suspension; (9) appearing pro se as an intervenor in the matter of an estate which respondent had represented prior to his sus-

pension; and (10) the preparation of articles of incorporation, certificates of stock, and corporate bylaws in connection with a corporation of which respondent is an incorporator and shareholder with two lay persons who reside in Mt. Pleasant.

A more detailed elaboration of the factual situations involved with each of the foregoing allegations will be discussed in detail below.

■ I. As a preliminary matter, we note this court has inherent constitutional power to discipline attorneys within the State of Iowa, this power extending to attorneys who are under suspension from the practice of law. *Committee on Professional Ethics and Conduct of Iowa State Bar Association v. Toomey*, 253 N.W.2d 573 (Iowa). An attorney may be found in contempt and liable to disbarment for violating a suspension order. *Toomey, supra.*

II. The first issue for our consideration is whether the preparation and certification of abstracts of title constitutes an ordinary part of the practice of law. It is undisputed that the respondent prepared and certified some 32 abstracts during the time of his suspension. It is also undisputed that the preparation and examination of abstracts is not done solely by lawyers in this state, although such is commonly part of the general practice of law in Iowa. The complainant contends that since such acts constitute an ordinary part of the practice of law, an attorney under suspension is barred from preparing or certifying them even though he might otherwise have done so as a lay person. In support, complainant cites *In re Lizotte*, 32 R.I. 386, 79 A. 960, in which a suspended attorney was found in contempt for having searched records and certified abstracts. In *Lizotte*, the court commented at page 961 of 79 A.:

> "The matters above enumerated are regular, legitimate, and recognized parts of a lawyer's profession, . . . . Members of bar who are under suspension will be required to comply with the terms of the decree suspending them in such a manner that there may be no ground for suspicion on the part of other

members of the bar or of the public that the decrees of this court are not being exactly observed in their letter and their spirit. A failure to so act will be a cause for further punishment."

We have reached a similar conclusion regarding the preparation of income tax returns. See *Toomey, supra.* Applying a similar rule to the preparation of abstracts would seem to be appropriate. To allow an attorney to continue in either of such activities while under suspension would permit a continuance of the practice of law as far as would be discernable to the remainder of the bar and the public at large.

■ Respondent points out that the Supreme Court of New Jersey reached a contrary result in *In re Stoldt*, 37 N.J. 364, 181 A.2d 364. *Stoldt* is partially distinguishable in that it involved a specific rule concerning the employment of suspended attorneys in providing services in law offices in the practice of law. None of the activities there challenged took place in law offices. Even so, the court found that Stoldt's work as an "abstractor" did not constitute the practice of law. We find to the contrary based on the reasoning found in *Lizotte, supra*, which is also enunciated in *State ex rel. Nebraska State Bar Association v. Butterfield*, 172 Nebraska 645, 111 N.W.2d 543. An extensive quote from *Butterfield* which appears at page 546 of 111 N.W.2d applies to the matter before us:

> ". . . Admittedly, respondent performed such work prior to his suspension. Some were performed in relation to real estate transactions in which he was the real estate broker, but in others he was not. It seems clear to us that the doing of such work is within the province of a lawyer to do. It is properly identified as the practice of law, whether or not it might under some circumstances be properly performed by others not admitted to the bar. An order of suspension deprives the suspended lawyer from performing any service recognized as the practice of law and which is usually performed by lawyers in the active practice of law. It is the contention of respondent that these

services were performed in his capacity as a licensed real estate broker, notary public, abstracter, and loan agent. It is not necessary for us to determine in this case if and under what circumstances others might perform such services, although not admitted to the bar. A suspended lawyer, who in connection with his law office engages in other activities, is in no different position than the active lawyer who confines himself solely to the practice of law in determining if the suspension order was violated. Where one is generally known in a community as a lawyer, it might well be impossible to divorce two occupations closely related if the rule were otherwise. *A suspended lawyer will not be heard to say that services recognized as within the practice of law were performed in some other capacity when he is called to account."* (Emphasis supplied).

Respondent also notes that the title standards of the Henry County Bar Association were changed in 1977 to allow acceptance of abstracts which were not prepared by other attorneys. This provides little consolation to the respondent for the title standards were changed only after a member of the local bar had inquired as to the proper reception to be accorded an abstract prepared and certified by respondent. Thus a portion of the respondent's conduct in preparing abstracts clearly antedated the change in the local title standards. Regardless of the effective date of the amendment to the title standards, respondent's conduct both preceding and following the amendment would seem to be covered by the rationale of the *Lizotte* case, and followed by the Nebraska Court in *Butterfield.*

III. With respect to the complainant's allegation that respondent prepared and executed a court officer's deed and an affidavit of possession in the fiduciary position of guardian and conservator, there appears to be some conflict in the record as to whether respondent actually prepared the instruments in question. At the hearing before the commissioner, the respondent testified that if he had prepared the documents, it was on the advice of his counsel. At the

direction of a judge of the district court, respondent engaged independent counsel to represent him in the guardianship-conservatorship. In light of the factual uncertainty with respect to respondent's action in this regard, and in view of the fact he had retained counsel for the guardianship, we deem it improper to lay any emphasis on this allegation in the complaint. In fact, this instance does not appear to have been argued by the complainant in its brief as an isolated violation of the suspension order, but only as a "part of the overall circumstances" to be considered.

The complainant does claim the respondent was appointed guardian-conservator because of his expertise as a lawyer, and therefore continuing in that capacity after his suspension is subject to criticism. The engagement of independent counsel for the guardianship-conservatorship, however, would seem to indicate an intention on the part of the respondent to comply with the direction of the court. We place no emphasis on this circumstance.

IV. The complainant contends Gartin failed to withdraw as attorney of record from all litigation in which he was counsel as of November 10, 1976, the date of his suspension. This contention stems from the fact Gartin's name remained on the listing of cases pending in Henry County. Complainant did not argue this point in its brief and argument.

Gartin stated under oath there was only one case "still active" which he had not transferred to other counsel, and in that case he had given notice to the party he had represented that he could not continue in the case in light of the suspension order. The transcript of testimony further indicates Gartin had been informed by some source that he did not have to formally withdraw from all cases, and a reading of the transcript indicates this source might have been District Judge Bainter, who had ordered the office of the clerk of the court to send out several notices of withdrawal to parties Gartin had been representing. Such conduct on Gartin's part would seem to

indicate a good faith effort to comply with the suspension order, leaving his name associated only with inactive cases in the district court.

The foregoing analysis may be subject to one qualification—it is unclear what Gartin meant by an "active" case. If he had reference to a case which would soon be coming to trial, then there would be reason for him to withdraw. If he meant a case that would not be coming to trial until a later date, at a time which he hoped would be subsequent to the restoration of his license and when he would wish to continue to represent one of the parties involved, then he would in fact continue to be of counsel during the period of his suspension and it would then be arguable that he violated the suspension order. There is no elaboration on this possibility in the record, and we must presume the respondent acted in good faith in this respect.

V. The complainant next challenges Gartin's continuation in force of his professional liability insurance. Gartin defends his conduct in this regard on two grounds. First, on the advice of counsel, he maintained payments so as to be assured of coverage in the event of malpractice claims against him which might have arisen before his suspension. Secondly, on the advice of his insurance agent, he maintained his insurance in force as to avoid an increase in premiums if he were to cancel the insurance and then resume coverage at a later date. Extensive attention is not paid to this area by the complainant, but the complainant urges consideration of these circumstances on the overall picture or the totality of the circumstances. We incline to the view the respondent acted reasonably and in compliance with the suspension order in this area.

VI. The complainant next contends Gartin gave the appearance of continuing to practice law by accompanying former clients to real estate closings on two different occasions. There is evidence in the record that the persons he accompanied were elderly personal friends and that they had requested his presence at the closings. There is no indication Gartin rendered legal services in relation to either of the closings, nor is there any indication that he participated in the transactions. Only his presence is established, although the record does disclose he prepared the abstract of title in one instance. We have dealt with the abstract issue herein.

It is difficult to construe mere presence at the real estate closings as giving the appearance of the practice of law, without an additional showing of the rendition of services of a legal nature. To find such here would necessitate our engaging in unwarranted speculation. Continued association with friends who happen to be former clients is to be expected during a period of suspension such as the case here. To expect otherwise would be unreasonable. The situations described did offer an opportunity for the rendition of legal services, but there is no indication Gartin accepted any invitation to render such services. His presence at the real estate closings should be given little, if any, weight in concluding whether he is in contempt of our suspension order.

VII. The next issue involves the use by Gartin of his letterhead stationery, statement forms and envelopes identifying him as an attorney, his continued listing in the yellow pages of the telephone directory, and the use of his former law office for other business pursuits. Complainant claims that this gives the appearance of the practice of law and is thus contemptible conduct under the suspension order.

Gartin admits the use of his stationery and envelopes in correspondence with former clients, other attorneys and nonclients, and contends that a suspended lawyer should be permitted to use the materials at hand at the time of his suspension. His argument, based on convenience only, cannot withstand the countervailing fact that the use of materials identifying Gartin as an attorney does give the appearance of the practice of law. Such would be the intent of their use prior to suspension, and their continued use would carry such an impression to all those observing such conduct.

The appearance of Gartin's name in the yellow pages of the phone directory

presents a different question. Such listing does not involve a willful act on the part of the respondent, as the listing is usually renewed by the telephone company without consulting the party being listed. Such an omission, in isolation, has not been held to constitute the practice of law, or the reprehensible appearance thereof. Cases cited by the complainant, *In re Hawkins,* 81 Wash.2d 504, 503 P.2d 95, and *State v. Schumacher,* 214 Kan. 1, 519 P.2d 1116, involved not only the continued telephone listing, but also the rendition of legal services for clients during the suspension period. Such is the case here, as noted earlier with respect to the preparation of abstracts, and as may be noted later. While not inherently contemptible, the listing in the telephone directory may be considered with respect to the entire picture.

The continued use of the office which Gartin had used in connection with his law practice presents an issue which is more easily determined. There is no evidence of the building being used for the practice of law. There is no sign indicating the presence of an attorney and the phone is answered, "Mr. Gartin's office". It is used by Gartin to carry on nonlegal business pursuits in which he had been engaged before his suspension. Cases cited by the complainant, while involving the continued use of the same office, also involved the rendition of legal services through such offices. Absent such a showing and the presence of other evidence of the office appearing to be used as a law office, its continued use for other business purposes is not contemptible. Gartin still has a right to make a living and there is no indication that he has done anything to give the appearance of the operation of a law office.

In sum, the continued use of the stationery and envelopes, and the continuation of the telephone directory listing may be considered as circumstances indicating possible violations, with the use of the letterhead being closest to being inherently violative of the suspension order, due to the implications following its very existence. In the context of respondent's activity it definitely contributes toward a finding of contempt.

VIII. The complainant next contends that the filing of a probation report to secure the discharge of a former client, if not in fact constituting the practice of law, does give the appearance thereof. We find little merit in this contention. There is no indication lawyers serve as probation officers as a regular part of their practice. Examination of the record in this case indicates the contrary. Nor is there any indication that skills unique to a part of the legal profession were utilized in the making of the report. That the report was in relation to a former client is of little relevance so long as Gartin ceased to represent the client during the period of his suspension. There is no evidence in the record Gartin violated the suspension order in this regard.

IX. The next two issues, Gartin's pro se filing of an attorney's lien and his intervention in the Wellington estate tax litigation, will be considered concurrently, for they concern the common question of pro se activity by a suspended attorney.

Complainant contends that the maintenance of an action for attorney fees is dependent upon the status of the lawyer at the time of the initiation of the lien, citing, among other cases, *Goldstein v. Bologna,* 39 Misc.2d 865, 241 N.Y.S.2d 903 (Sup.Ct.) In *Goldstein,* a question as to the adequacy of the services rendered was present. Such is not established here. When faced with the question of services rendered prior to suspension without a qualitative challenge, New York courts have reached a different result. See *Flecha v. Goodman,* 31 Misc.2d 444, 221 N.Y.S.2d 823 (Sup.Ct.); *Tiringer v. Grafenecker,* 38 Misc.2d 29, 239 N.Y.S.2d 567 (Sup.Ct.) It would seem most logical to follow the rationale of the latter cases and find that a recovery for legal services is dependent on the status of the attorney at the time the services were rendered rather than at the time recovery for the fees is sought. The relevant Iowa statute, § 610.-18, The Code, is supportive in that it addresses a lien for services "in an action or proceeding in which the attorney claiming the lien *was* employed, . . . ." (Em-

phasis supplied.) The focus of the statute is placed on the status of the attorney at the time the services were rendered.

Gartin's appearance in the Wellington litigation as an intervenor is attacked by the complainant on the basis that Gartin was continuing to represent the interests of the estate which he had represented prior to his suspension. The probate court found Gartin to be a proper intervenor for the reasons that he was protecting his fee previously earned representing the estate and that he was attempting to foreclose any possibility of a professional liability suit possibly being instituted against him. Complainant urges that we not accept such a representation by Gartin. It is not necessary that we do so, especially since the estate had obtained other counsel since Gartin's suspension. Regardless of whose interests were being represented, it is the pro se appearance of Gartin which provides a genuine question of noncompliance with the suspension order, both in this instance and the filing of the attorney's lien.

■■■■ The foregoing are not the only instances of Gartin's appearing pro se before the district court. He admits to maintaining a voluminous pro se file. It is his contention that the practice of law consists solely in the rendition of services *for others* for a fee. This is inconsistent with Court Rule 118.14, which provides:

> "Any attorney suspended pursuant [regarding conviction for a crime] to this rule shall refrain, during such suspension, from all facets of the ordinary law practice including but not limited to the examination of abstracts, consummation of real estate transactions, preparation of legal briefs, deeds, buy and sell agreements, contracts, wills and tax returns."

Attention is paid not for whom the services may be rendered, but to the nature of the activity. So long as the activity is that which is a "facet of the ordinary practice of law", it is prohibited. The rule specifically addresses the preparation of legal briefs, which would be unavoidable in carrying on a pro se practice. Pro se legal activity is the practice of law because it involves the use of specialized skills obtained in the practice of law. As stated by the court in *Lozoff v. Shore Heights, Ltd.,* 35 Ill.App.3d 697, 342 N.E.2d 475 at 478:

> "The practice of law is not limited to court appearances . . . but includes the giving of advice or rendition of any service requiring the use of any degree of legal knowledge or skill. . . ."

Pro se activity involves court appearances as well as the rendition of legal services, even for one's self. If the qualifications to indulge in any activity are derivative from having been a lawyer and the activity constitutes a part of the ordinary practice of law, then a suspended lawyer is barred from such activity. As stated by the Supreme Court of North Dakota in *Application of Christianson,* 215 N.W.2d 920 at 925–926:

> "A suspended lawyer is not the same as a lay person. * * *
>
> "A suspended lawyer may engage in some activities if he is otherwise qualified to do so, but not if his qualifications come from having been a lawyer."

Such a conclusion is especially essential if it is to appear to the public and the bar that the suspension order is being complied with. A suspended lawyer who repeatedly appears in court through the maintenance of an extensive pro se practice cannot give the impression that he has been effectively suspended.

We therefore conclude that pro se court activity by a suspended attorney violates the suspension order because (1) it does constitute the practice of law and is proscribed by Court Rule 118.14 and (2) it further gives to the public and to the bar the appearance of the continued practice of law, and results in the viability of the suspension order being questioned.

The fact that a lay person may appear pro se does not mean that a suspended lawyer may do so, for such involves the continued use during the suspension period of knowledge gained through the practice of the profession. A lawyer applying legal skills both gives the appearance of and equates to engagement in the practice of

law. We conclude Gartin was in contempt of the suspension order for having engaged in the pro se legal activity detailed above.

X. One of the most serious complaints lodged against Gartin by the complainant involves his preparing of articles of incorporation, certificates of stock, and corporate bylaws in connection with a corporation of which he and two lay persons are incorporators and shareholders. The principles set forth in the preceding section are also appropriate in this context. When the activity engaged in by a suspended attorney constitutes a part of the ordinary practice of law, such activity is violative of a suspension order.

The preparation of articles of incorporation and bylaws are services involved in the organization of any corporation. Several courts have held that the preparation of articles of incorporation by a nonlawyer constitutes the unauthorized practice of law. *The Florida Bar v. Keehley,* 190 So.2d 173 (Fla.); *People ex rel. Dunbar v. McClellan,* 164 Colo. 202, 434 P.2d 126. The observations of the Florida court in *Keehley, supra,* at 175 are relevant:

> "It is the referee's conclusion that neither the absence of compensation, nor the close personal relationship between the respondent and the person for whom the services were rendered, nor his present or prospective future interest in the transaction, legalizes his formation of these corporations, and his services which undoubtedly constitute the practice of law in connection with these corporations".

Regardless of the relationship between Gartin and the other parties involved, or the entity being created, the focus remains on the nature of the services he rendered in the organization of the corporation. Since the preparation of documents of incorporation does constitute the practice of law, Gartin was obviously in contempt of the suspension order in preparing the aforementioned corporate documents.

XI. Since the submission of this matter to the full bench of this court, the conviction of respondent for the crime of perjury, upon which his temporary suspension was bottomed, has been affirmed. See *State v. Gartin,* 271 N.W.2d 902 (opinion number 61042, Iowa 1978). In light of the affirmance of his conviction, and further in view of the fact that he is in contempt of the suspension order of this court for (1) preparing and certifying abstracts of title; (2) continuing use of his letterhead stationery, statements and envelopes which identify him as an attorney-at-law; (3) maintaining an extensive pro se file with corresponding court activity; and (4) preparing documents of incorporation during his suspension, we order the license of Gartin to practice law in this state revoked.

LICENSE REVOKED.

All Justices concur, except McCORMICK, UHLENHOPP and HARRIS, JJ., who concur specially, and McGIVERIN, J., who takes no part.

McCORMICK, Justice (concurring specially).

The affirmance of defendant's perjury conviction has made it unnecessary to decide whether his license should be revoked on any other ground. That ground is sufficient, and I would revoke his license on that basis.

UHLENHOPP and HARRIS, JJ., join in this special concurrence.