COMMITTEE ON PROFESSIONAL ETHICS AND CONDUCT OF the IOWA STATE BAR ASSOCIATION, Appellee,

v.

William H. MICHELSON, Appellant.

No. 83–143.

Supreme Court of Iowa.

Feb. 15, 1984.

Mark W. Bennett of Babich, Bennett & Nickerson, Des Moines, for appellant.

Lee H. Gaudineer, Jr., of Austin & Gaudineer, Des Moines, for appellee.

SCHULTZ, Justice.

This attorney disciplinary proceeding arises from a two-count complaint filed by the Committee on Professional Ethics and

Conduct of the Iowa State Bar Association (Committee) with the Grievance Commission of the Supreme Court of Iowa (Commission) concerning certain activities of respondent William H. Michelson, a practicing attorney from Des Moines, Iowa. The Commission dismissed count I, but concluded in count II that respondent had violated various disciplinary rules and ethical considerations by threatening criminal prosecution in an attempt to collect a debt for his client. The Commission recommended suspension of respondent's license for ninety days. Respondent appealed. Upon our de novo review, we concur in the Commission's report except that we reprimand Michelson for his conduct.

The first count of the complaint dealt with a matter separate from count II. Although the Commission dismissed count I and the Committee did not appeal from that ruling pursuant to Iowa Supreme Court Rule 118.11, (Rule 118), the Committee's brief deals in part with this count. Respondent filed a motion to strike those portions of the brief dealing with count I. We reserved ruling and ordered the motion submitted and considered with this appeal. Because we agree with the dismissal, we shall not discuss the merits or content of this count. Nevertheless, we overrule respondent's motion to strike, since we conclude we must have the benefit of the entire record in disciplinary actions concerning a lawyer's fitness to practice law.

The allegations of misconduct in the second count evolved out of Michelson's attempt to collect a debt owed one of his clients. The debtor had received possession of certain merchandise by giving a check and immediately stopping payment on it. Michelson contacted the Polk County Attorney's Office in an effort to press criminal charges. That office declined prosecution based on the amount of the check, the need for extradition and their understaffing.

The complaint involves letters written by Michelson. In Michelson's first letter concerning the bad check, we find the following language:

Unless I hear some interesting explanation that I don't know now, I will have to assume that you have deliberately committed felonious theft, and please be advised that if this is not made good within ten days, you may be facing up to five years in the state penitentiary for what you have done.... If this is not done within ten days, we will turn it over to the county attorney immediately. I am informed that you were transferred by the Air Force to Texas, so be advised that we could have you extradited and it would probably destroy your military career as well.

After a telephone call from the debtor, Michelson wrote another letter accusing him of committing a felony and giving him the following admonition:

If you don't do that within the next few weeks, I will have no choice but to turn it over to the criminal authorities. I have no doubt that you would be drummed right out of the Air Force as well as facing the risk of five years in the state penitentiary. I just don't see why this is necessary to do. Since you may not be able to raise that much money at one time, I guess I would accept it in two installments, but the first one must reach me by the end of April and the second one by the end of May. Perhaps a relative or someone would help you out of this, since you certainly stuck your neck in the noose.

Michelson wrote yet another letter to the debtor in which he stated "any more of this stop payment nonsense, and I will have no choice but to treat it as [a] brand new criminal violation." On the same day he wrote to the debtor's commanding officer. After outlining the problem and indicating the debtor was guilty of a felony, Michelson stated the following:

I don't think it would do the dignity of the Air Force or the peace and quiet of your base any good to have a serviceman hauled off by the state police on an interstate extradition warrant. Unfortunately, this is the alternative he has left us with. If there is some sort of internal

disciplinary mechanism that can be used on this, we request that it be considered; more likely, a stern warning from you or some other superior officer would be sufficient. In return for the amount that remains, we will gladly call the whole matter closed.

The debtor made a formal complaint to the Committee concerning Michelson's conduct in writing these letters. The Committee notified Michelson and conducted an investigation. As a result, the Committee determined that respondent should be publicly reprimanded for threatening to file criminal charges against an individual from whom he sought to enforce a civil claim in violation of Iowa Code of Professional Responsibility for Lawyers DR 7–105(A). Pursuant to Rule 118.3, respondent was notified of the Committee's intent to reprimand and that he had thirty days from receipt of the letter to file exceptions with the Grievance Commission. Michelson elected to file exceptions and no report of the reprimand was made. The Committee decided to proceed with a complaint before the Commission, however. After an evidentiary hearing, the Commission concluded that respondent violated the following ethical considerations and disciplinary rules of the Iowa Code of Professional Responsibility for Lawyers: DR 1–102(A)(1), (5) and (6), EC 7–1, EC 7–21, DR 7–102(A)(1), DR 7–104(A)(2), DR 7–105(A), EC 9–6, and Iowa Code section 610.24(3) and (4) and recommended that his license be suspended for ninety days.

On appeal respondent asserts that: (1) his constitutional rights of due process were violated by failure of the Committee and its rules, the Commission and its rules, or Rule 118 to adequately notify him that exercising his right to appeal from the decision to reprimand him could result in the imposition of a greater punishment; (2) the Commission erred in finding that respondent's actions on behalf of his client were unethical; (3) the Commission's failure to timely prosecute this matter and file its decision as required by Rule 118 warrants dismissal of the complaint; and (4) the punishment recommended by the Commission is excessive in the circumstances of this case.

I. Due process is guaranteed an attorney in disciplinary proceedings. *In re Ruffalo*, 390 U.S. 544, 551–52, 88 S.Ct. 1222, 1226, 20 L.Ed.2d 117, 122–23 (1968); *Committee on Professional Ethics and Conduct v. Hurd*, 325 N.W.2d 386, 388–89 (1982). The potentially serious consequences flowing from this type of proceeding invoke substantial procedural due process protection. *Committee on Professional Ethics and Conduct v. Behnke*, 276 N.W.2d 838, 842 (Iowa), *appeal dismissed*, 444 U.S. 805, 100 S.Ct. 27, 62 L.Ed.2d 19 (1979).

Respondent urges that the failure of either the Committee or Rule 118 to give him adequate notice that contesting the Committee's decision to reprimand him could lead to pursuit of a formal disciplinary charge resulting in a greater punishment violated his rights to due process. He contends Rule 118 and its subparts create ambiguity and uncertainty about the possibility of increased punishment and are void for vagueness. He further maintains that the notice he received from the secretary of the Committee informing him that he had thirty days to file exceptions did not notify him of the possibility of harsher punishment in the event he decided to except. If it was obvious that he could be suspended after filing an exception, he insists he would not have done so.

This court has statutory authority, Iowa Code section 610.23, as well as inherent power to discipline attorneys within the state. *Committee on Professional Ethics v. Gartin*, 272 N.W.2d 485, 487 (Iowa 1978); *Commission on Professional Ethics and Conduct v. Toomey*, 236 N.W.2d 39, 40 (Iowa 1975). In addition to the proceedings provided by Iowa Code chapter 610, complaint procedures have been promulgated in Rule 118. Members of the Committee on Professional Ethics and Conduct serve as appointed commissioners of this court to initiate or receive and process complaints against any attor-

ney licensed to practice law in Iowa. They stand in the shoes of a prosecutor. At the completion of their investigation they have authority to do three things: (1) dismiss the complaint; (2) admonish or reprimand the attorney; or (3) file and prosecute a complaint before the Grievance Commission. Rule 118.2. Their power to admonish or reprimand an attorney is restricted. If an attorney files an exception to the reprimand, the reprimand shall not be made public and is stricken from the record. The Committee is given a further option, however, and may "proceed further with any complaint against such attorney before the grievance commission." Rule 118.3. After a hearing before the Grievance Commission, it "shall dismiss the complaint, or reprimand the attorney, or recommend to this court that the license to practice law of the accused attorney be suspended or revoked." Rule 118.9. Discretionary review of the Commission's decision may be obtained by the Committee or the respondent may appeal from the report. Rules 118.10 and .11. Whether or not an appeal is taken, this court rules on the final disposition. *Id.* While we give respectful consideration to the Commission's recommendation and findings in our de novo review, we are not bound by them. *Committee on Professional Ethics and Conduct v. Rabe,* 284 N.W.2d 234, 235 (Iowa 1979).

 In attacking the procedure and rules on a constitutional basis, respondent assumes a heavy burden to overcome the presumption of constitutionality and negate every conceivable interpretation favoring constitutionality. *State v. Sullivan,* 298 N.W.2d 267, 270 (Iowa 1980). Michelson has not met this burden. By using the basic tools of research acquired by all lawyers in their legal training, Michelson could have determined exactly what his position would be if he excepted and prevented the Committee from spreading the reprimand on the public records. This situation is not unlike an offer by a prosecutor allowing a defendant to plead guilty to a lesser offense. In the event the offer is refused, the prosecutor may proceed to prosecute a higher offense without a due process viola-

tion unless the raising of the charge is based on vindictiveness of the prosecutor. *United States v. Goodwin,* 457 U.S. 368, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982). A presumption of prosecutorial vindictiveness is not warranted by a pretrial raising of the charge after a refusal to plead. *Id.* at 382–84, 102 S.Ct. at 2493–94, 73 L.Ed.2d at 85–88. We conclude the Committee did not violate respondent's due process rights by issuing a complaint, when its only choice was to let the matter stand unprosecuted or file a complaint. We find no further violation of due process in regard to notice, since the rules specifically set out the procedure and the penalty that may be exacted as a consequence of that procedure.

II. Michelson has never denied writing the letters in question. He does claim his actions were not in violation of the Iowa Code of Professional Responsibility for Lawyers. The primary thrust of the complaint was that the letters violated DR 7–105(A) which mandates that: "A lawyer shall not present, participate in presenting, or threaten to present criminal charges solely to obtain an advantage in a civil matter." The duty of a lawyer to our adversary system is further explained in EC 7–21:

> The civil adjudicative process is primarily designed for the settlement of disputes between parties while the criminal process is designed for the protection of society as a whole. Threatening to use, or using, the criminal process to coerce adjustment of private civil claims or controversies is a subversion of that process; further, the person against whom the criminal process is so misused may be deterred from asserting his legal rights and thus the usefulness of the civil process in settling private disputes is impaired. As in all cases of abuse of judicial process, the improper use of criminal process tends to diminish public confidence in our legal system.

Michelson claims both he and his client were also interested in criminal prosecution; consequently, his actions were not

solely to obtain an advantage in a civil matter. We find no merit in this contention. The plain language of the letters threatened criminal action unless the debtor immediately paid his civil obligation. Moreover, respondent knew the county attorney's office was not willing to prosecute. Respondent violated EC 7–21 and DR 7–105.

Additionally, Michelson's letter to the base commander violated DR 7–102(A)(1). This rule prohibits a lawyer from taking any action on behalf of his client when he knows or when it is obvious that such action would serve merely to harass or maliciously injure another. In the letter to the commander, Michelson indicated that it would not be good for the Air Force to have a serviceman hauled off by the police on a felony charge and suggested instead that the service employ an internal disciplinary mechanism to force payment from the debtor.

Although Michelson's actions primarily were geared to obtaining payment of the debt, we believe it was obvious to Michelson that this action would harass and maliciously injure the debtor's standing with his superior officers. In sum, we conclude Michelson also violated DR 7–102(A)(1).

III. Michelson contends this disciplinary action should be dismissed since the Commission failed to comply with the procedural mandates of Rule 118. He points out that Rule 118.7 requires the Commission to set a complaint for a hearing within thirty days from the date of service unless discovery is engaged in, in which case the hearing should be set from sixty to seventy-five days. Admittedly, this provision was not followed. He further notes the Commission violated Rule 118.29 requiring a ruling within thirty days from the date set for the filing of the last brief and argument. Admittedly, this provision was also violated. The purpose of the time provisions contained in Rule 118 is to expedite disciplinary proceedings in order to protect both the public and the lawyer concerned. We are as concerned with the need to protect the public from an unfit lawyer who continues to practice during the investigatory process as we are with the due process rights of the lawyer involved. Our rules do not provide for dismissal if a time violation occurs. We conclude dismissal for time violations is only necessary when the lawyer can show that he suffered prejudice by the delay. *Committee on Professional Ethics and Conduct v. Behnke,* 276 N.W.2d 838 (Iowa 1979). In *Behnke,* we discussed the late filing of a report under Rule 118.9 which employs the word "shall." There, we indicated that the word "shall" was merely directory and failure to comply did not invalidate the proceedings unless prejudice is shown. 276 N.W.2d at 842. We held that due process did not require the thirty-day filing requirement to be construed as mandatory. *Id.* We believe the *Behnke* rule is applicable here.

Our examination of the record shows Michelson was not prejudiced by the delay. He was afforded a full-blown hearing and there is no indication that the outcome of the hearing was affected. Although Michelson claimed that he was attempting to obtain a license in New Jersey and that this proceeding delayed his application, we note Michelson is now practicing in New Jersey. Any inconvenience to respondent by the delay is far outweighed by the rights of the public to have this matter adjudicated. We find no prejudice.

By these conclusions we do not condone delay in disciplinary proceedings. We have recently changed our procedures to speed the appeal process. Nonetheless, we sympathize with the time constraints of the hard-working individuals who donate their time to better the profession and serve the public by acting on the Commission. We are certain they will act with reasonable speed so a violation of our time limits will be an unusual occurrence.

IV. Respondent contends a ninety-day suspension is too severe and unduly harsh, considering all of the facts and circumstances. We have carefully considered the recommendation of the Commission and

find the propriety of suspending respondent's license is an extremely close question.

Respondent is a young, sole practitioner who wrote these letters approximately two years after he had entered practice. He believed in the merit of his client's position both civilly and criminally and later successfully collected the debt in a civil action. The debtor did secure the property in question from respondent's client by the ruse of giving a check when all indications were that he intended to stop payment. This, of course, does not excuse respondent's conduct. The record also indicates that respondent is volatile and already had been privately admonished for intemperate conduct on one occasion and was subsequently warned by a district judge for the same kind of behavior in another matter. The Commission's report made no finding that the respondent acted maliciously or in bad faith, nor do we. Additionally, Michelson testified that he had already learned a lesson from the episode and does not intend to repeat this activity. Thus, we conclude that in the circumstances of this case respondent should be disciplined by reprimand.

We therefore reprimand Michelson for his misconduct.

ATTORNEY REPRIMANDED.

All Justices concur except REYNOLDSON, C.J., and McGIVERIN, J., who dissent.

REYNOLDSON, Chief Justice (dissenting).

I believe the recommendation of the Grievance Commission in this proceeding was fair and justified and should be adopted by the court. I therefore dissent.

McGIVERIN, J., joins this dissent.